# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MASSACHUSETTS

PREMERA BLUE CROSS, on behalf of itself and
all others similarly situated,

                 Plaintiff,

        v.

TAKEDA PHARMACEUTICAL COMPANY
LIMITED, TAKEDA PHARMACEUTICALS
U.S.A., INC., and TAKEDA
PHARMACEUTICALS AMERICA, INC.,

                 Defendants.

Civil Action No. 1:23-cv-11254

## JOINT STIPULATED PROTOCOL FOR THE DISCOVERY OF
## ELECTRONICALLY STORED INFORMATION AND HARD COPY DOCUMENTS

The parties to the above-captioned litigation (the "action" or this "litigation"), through their
counsel, have stipulated and agreed to give effect to this Joint Stipulated Protocol for Discovery
of Electronically Stored Information and Hard Copy Documents ("ESI Protocol"), to facilitate
discovery in this action. This ESI Protocol shall apply to all cases in this litigation.

The parties shall make good-faith efforts to comply with and resolve any differences
concerning compliance with this ESI Protocol. If a producing party, notwithstanding its good-faith
efforts, cannot comply with any material aspect of this ESI Protocol or if compliance with such
material aspect would be impossible or unreasonable, such party shall inform the requesting party
in writing a reasonable time before the date of production as to why compliance with the ESI
Protocol is impossible or unreasonable. No party may seek relief from the Court concerning
compliance with the ESI Protocol unless it has conferred in good faith with the affected parties.

All productions in this litigation are subject to the protective order separately entered by
the Court in this litigation.

1

# I.   SCOPE

A.   **General.**

1.      The procedures and protocols set forth in this Protocol shall govern the production of ESI and hard copy documents in this matter, unless the parties agree in writing to change them or they are changed by the Court. This ESI Protocol is intended to aid the parties by providing a more predictable, cost-effective, and efficient management structure for the maintenance and production of electronic discovery. Nothing in this ESI Protocol shall supersede the parties' obligations under the Federal Rules of Civil Procedure to produce all relevant, non-privileged information if appropriately requested. Nor is anything in this ESI Protocol intended to be an exhaustive list of discovery obligations or rights of a Producing Party or Requesting Party. Likewise, nothing in this ESI Protocol shall be interpreted to require production of irrelevant information or relevant information protected by the attorney-client privilege, work-product doctrine, or any other applicable privilege or immunity. The Parties do not waive any objections to the production, discoverability, admissibility, or confidentiality of documents.

B.   **Disputes.**

2.      The parties shall meet and confer in good faith on any issue regarding ESI, as necessary, including any issues relating to custodians, data sources and search methodologies (*e.g.*, search terms and other methods of identifying responsive ESI), that arise under this ESI Protocol or otherwise. In the event the parties cannot reach an agreement on a disputed matter, the parties shall submit the matter to the Court.

# II.   DEFINITIONS

A.      **"Documents"** shall have the same definition as set forth in Local Rule 26.5(c) and Federal Rule of Civil Procedure 34(a).

B.     **"Document Family"** refers to a group of related documents that includes parent and child documents (e.g., a parent email and any attachments thereto, including, but not limited to, Excel spreadsheets, word documents, PowerPoint presentations, or PDFs).

C.     **"Electronically stored information"** or **"ESI,"** as used herein, means and refers to computer-generated information or data, stored in or on any storage media located on computers, file servers, disks, tape, USB drives, or other real or virtualized devices or media, as such information is defined in the Federal Rules of Civil Procedure, including Rule 34(a).

D.     **"Extracted Text"** means the text extracted from a Document, and includes all header, footer and document body information when reasonably available.

E.     **"Hard Copy Document"** means a document collected from physical files and not from electronic sources.

F.     **"Load/Unitization file"** means an electronic file containing information identifying a set of paper-scanned images or processed ESI and indicating where individual pages or files belong together as documents, including attachments, and where each document begins and ends. A Load/Unitization file will also contain data relevant to the individual Documents, including extracted and user- created metadata.

G.     **"Media"** means an object or device, including, but not limited to, a disc, tape, computer or other device, whether or not in the Producing Party's physical possession, on which data is or was stored.

H.     **"Metadata"** means and refers to information about information or data about data, and includes, without limitation: (i) information embedded in or associated with a native file that is not ordinarily viewable or printable from the application that generated, edited, or modified such native file; and/or (ii) information generated automatically by the operation of a computer or other

3

information technology system when a native file is created, modified, transmitted, deleted or otherwise manipulated by a user of such system.

I.      **"Native," "Native Format," or "Native Data Format"** means and refers to the format of ESI in the application in which it was originally created and/or as used by the producing party in the usual course of its business and in its regularly conducted activities.

J.      **"OCR text"** means text generated through Optical Character Recognition Process of image/bitmap picture representation of the documents.

K.      **"Parties"** means or refers collectively to the named plaintiffs and defendants in the above-captioned matter, as well as any later added plaintiffs and defendants. "Party" shall refer to a plaintiff or defendant, individually.

L.      **"Producing Party"** means or refers to any party in the litigation from which production of ESI or hard copy documents are sought.

M.      **"Requesting Party"** means or refers to any party in the litigation seeking production of ESI or hard copy documents.

N.      **"Static Image(s)"** means a representation of ESI produced by converting a Native File into a standard image format capable of being viewed and printed on standard computer systems. A Tagged Image File Format, or "TIFF," image is an example of a Static Image. "Tagged Image File Format" or "TIFF" refers to the CCITT Group IV graphic file format for storing bit-mapped images of ESI or paper documents. A Portable Document Format, or "PDF" image is another example of a Static Image.

## III.   PRESERVATION

**A.**   **Deleted Files and Litigation Holds**.

3.     To help contain costs, the parties shall not be obligated under this ESI Protocol to produce or preserve ESI that was deleted or lost as a result of the routine, good-faith operation of an ESI system prior to the date upon which the duty to preserve ESI and documents in connection with this litigation arose. Nothing in this provision limits or expands a party's obligation to search for ESI known to be "deleted" by a user that remains as a copy on an archive, backup, or as active data on some other central server or place within a party's possession, custody, or control, provided such search is otherwise consistent with and does not exceed the party's obligations under the Federal Rules of Civil Procedure.

4.     If a producing party learns that responsive ESI that existed as of the date upon which the duty to preserve ESI arose was lost, destroyed, or is no longer retrievable, the producing party shall explain, to the extent that the information is reasonably available, where and when the ESI was last retrievable in its original form, and the circumstances leading to its loss or destruction. Nothing in this agreement alters the Producing Party's obligation to demonstrate that such information is not reasonably accessible due to, *inter alia*, undue burden or cost pursuant to Federal Rule of Civil Procedure 26(b)(2)(B).

**B.**   **Types of ESI that Must Be Preserved but not Searched in the First Instance.**

4.1     personal computers, personal e-mails, personal mobile devices (including smart phones, tablets, watches, etc.), and instant messages if used for business activities during the relevant time period and if counsel has a good faith basis upon which to conclude that such materials are duplicative of data and documents available from other sources that are being searched.

5

C.   **Types of ESI that Need Not Be Preserved or Searched.**

5.   The parties agree that there is no need to preserve or collect ESI from the following sources, which are deemed to not likely to contain relevant information and to be not reasonably accessible:

5.1   random access memory (RAM) or other ephemeral data;

5.2   on-line access data such as temporary internet files, histories, caches, cookies, etc.;

5.3   data in metadata fields that are frequently updated automatically, such as last-opened dates;

5.4   "slack," "fragmented," or "unallocated" data;

5.5   personal computers not used for business activities, and personal e-mail not used for business activities.

**IV.   SEARCH PROCEDURES FOR ELECTRONIC DOCUMENTS**

A.   **Use of Search Terms.**

6.   To aid in the parties in meeting their obligation to search for and produce responsive discovery, the parties may use search terms and/or Boolean search strings (together "search terms"). In doing so, the parties shall identify ESI by: (a) identifying and selecting custodians and sources most likely to possess relevant documents; and (b) applying agreed-upon search terms to identifiable data repositories and custodial data sources in accordance with the provisions of Section IV.C. Due to the unique nature of text messages, collaboration system messages, and social media messaging, if such a need arises, the Parties shall meet and confer as to a protocol to govern the search for any responsive text messages, collaboration system messages (e.g. Chatter,

6

Slack, Teams) and social media messages. The protocol shall include the method used to identify the messages as well as the production format for different types of responsive messages, if any.

7.      Each producing party may, at its election, review ESI that contains any agreed-upon search terms for responsiveness and privilege prior to production to the requesting party. Each party shall be primarily responsible for identifying custodians and custodial data sources likely to contain relevant documents; however, the parties agree to confer as to custodian lists. The fact that a document may have been retrieved by application of search terms shall not prevent any party from withholding from production such document for lack of responsiveness or privilege. Conversely, the absence of a search term hit for a given document does not automatically render it non-responsive. To the extent any party identifies responsive ESI or documents not hit upon by the search term filters noted above, all such non-privileged documents must be produced, subject to the parties' review for privilege and any other objections to discovery requests.

**B.      Use of Technology Assisted Review.**

8.      Parties may choose to utilize technology workflows, including email threading, predictive coding, technology assisted review, or other form of machine searching not based on keywords (collectively, "TAR") to assist them in handling ESI, provided that, on the Initial Exchange Date described below, any party that opts to use such methods discloses that intent and endeavors to be reasonably transparent regarding the universe of documents subject to targeted collections or culling. If the Requesting Party objects to the producing party's disclosed approach, the parties will timely meet and confer regarding the matter and submit any unresolved disputes to the Court for resolution. The Parties shall not use search terms in combination with TAR to filter or remove potentially responsive documents from collection or review, except in accordance with a separate protocol to be memorialized in a stipulation among the Parties (consent to which shall

7

not be unreasonably withheld and, absent such agreement, shall be submitted to the Court for consideration), which stipulation shall also address training and validation.

9.      If a producing party elects to use TAR, it must, in addition to making the applicable disclosures set forth in Section IV.C. (*e.g.,* custodians and sources likely to contain relevant ESI, those to be searched, exclusion criteria, etc.) disclose in writing to the requesting party: (a) the name, publisher, version number, and description of the TAR software, TAR vendor and TAR coding process; (b) a general description of how the producing party intends that TAR process to work, including how it will train the algorithm; (c) the purpose(s) for which TAR is planned; (d) the quality control measures that will be taken, and; (e) the name, job title, and employer of a liaison reasonably available to address questions about the technical operation of the TAR software.

10.      The requesting party shall have fourteen (14) days to object in writing (via electronic mail or hand delivery) to any aspect of the TAR proposal The parties agree to promptly meet and confer in good faith to resolve any such objections. If the requesting party fails to object at that time, it shall not be precluded from challenging the producing party's methodology after reviewing the results of the document review and production or the documents produced, but the producing party reserves the right to oppose any such later challenge by the requesting party on timeliness or other grounds.

C.      **Electronic Searches.**

11.      The parties shall abide by the following process, which may be modified upon agreement of the parties.

11.1    The day a Party serves its objections and responses to document requests shall be referred to as the "Initial Exchange Date." On the Initial Exchange Date, each party shall provide, to the extent not previously provided at the Rule 26(f) conference:

11.1.1  An initial list of: (a) custodians within its organization likely to possess relevant ESI, along with each such custodian's job title and a brief summary of his or her primary responsibilities; (b) proposed keyword search terms and strings (including sematic synonyms, code words, acronyms, abbreviations, non-language alphanumeric associational references to relevant ESI, etc.) to be used when searching for ESI; (c) a list of non-custodial data sources (such as databases, servers, group shares, cloud-based storage, etc.) that may contain relevant information; and (d) any proposed exclusion criteria (including, but not limited to, date restrictions) related to ESI searches.

11.1.2  A list of any source of data that it reasonably expects would contain responsive ESI, with a specific delineation for each as to those it intends to search for responsive ESI using search terms, as well as any such sources which it does not intend to search using the proposed and negotiated search terms because the sources are not reasonably accessible due to undue burden or cost or because the relevant data is reliably identifiable by manual search or other agreed-upon means.

11.1.3  Organizational charts, to the extent they exist in the normal course of business and can be located by a reasonable search and investigation, sufficient to identify the departments within its organization in which: (a) any of the custodians referred to in step (1)(i)(a) above work or; (b) custodians expected to have relevant documents work.

11.2    Within fourteen (14) days after the Initial Exchange Date, the Requesting Party will identify any additional custodians, search terms, or search strings it believes should be

9

included. The Parties will then meet and confer about the disputed custodians and search terms promptly and in good faith. The Parties agree that they will cooperate in good faith regarding the formulation of appropriate search terms and strings and methods to be used to identify potentially responsive or relevant ESI. The Parties may agree to modify the search queries or the search methodologies during the course of the search query negotiation process if the search queries or the results of search methodologies appear under-inclusive or over-inclusive. If the Parties reach an impasse, they may submit the dispute to the Court in the form of a joint discovery letter no later than fourteen (14) days after the Party receiving the requests has provided the initial list of custodians and search terms and strings.

11.3    The parties will continue to meet and confer regarding any search process issues as necessary and appropriate during discovery. Nothing in this search protocol, or the subsequent designation of any search terms, shall operate to limit a party's obligations under the Federal Rules of Civil Procedure and applicable decisional authority to conduct a reasonable search for responsive documents. This ESI protocol does not address or resolve any other objection to the scope of the parties' respective discovery requests, and it does not prevent any party from undertaking searches of its own ESI for any purpose at any time.

**D.    Supplementation of Searches for ESI.**

12.    Each party may, upon reviewing documents actually produced in the litigation, and conducting other investigation and discovery, request – upon a showing of good cause – that additional search terms be employed and/or files from additional custodians be searched. The Parties agree to meet and confer in good faith concerning any such requests.

**E.     Email Thread Suppression.**

13.     Email threads are email communications that contain prior or lesser-included email communications. A most inclusive email thread is one that contains all prior or earlier-in-time-emails and attachments, including each branch of the email thread.  The Parties do not currently intend to use e-mail thread suppression to exclude any emails or attachments thereto from production. However, at any point in the litigation, should a Producing Party desire to use email thread to suppress prior-in-time emails from production, the Parties shall meet and confer concerning the appropriateness of email thread suppression and if the parties cannot agree the issue shall be submitted to the Court.  Nothing in this paragraph shall preclude a Producing Party from using email threading during the collection and review process. However, and for avoidance of doubt, emails may not be suppressed in final production.  Deduplication.

14.     To reduce the unnecessary costs of reviewing and producing exact duplicate documents, each party must use reasonable, good-faith efforts to avoid the production of duplicate ESI. Global de-duplication is to be executed at the document family level. Stand-alone files will de-duplicate against other stand-alone files, but not against attachments contained in document families. Deduplication shall be done on exact duplicate documents based on MD5 or SHA-1 hash values. Exact duplicate shall mean bit-for-bit identicality of the document content.

15.     No Party shall identify and/or eliminate duplicates of hard-copy documents or ESI by manual review or some method other than by use of the technical comparison using MD5 or SHA-1 hash values outlined above. For exact duplicate documents, the Producing Party will produce the metadata described in Section V for the Single Production Copy, as well as any such metadata that differs for the duplicate document(s). The producing party may either de-duplicate documents within custodians, or across custodians, provided they comply with the following:

11

15.1    If the Producing Party is de-duplicating across custodians, the producing party shall populate a field of data that identifies each custodian who had a copy of the produced document (the "duplicate custodian field") in addition to a separate field of data identifying the custodian whose document is produced.

15.2    If the producing party is de-duplicating within custodians only, there is no need to create or provide the duplicate custodian field.

16.    If during the course of its review, the Producing Party identifies duplicate documents, the Parties can confer regarding a custom deduplication protocol. Except for the removal of extracted logos, no custom deduplication method will be implemented without the consent of the Requesting Party, and such consent shall not be unreasonably withheld.

## V.    GENERAL PRODUCTION FORMAT

### A.    Production of documents originating as paper.

17.    All documents originating in paper format ("Hard Copy Documents") will be produced as single page TIFF images branded with a unique Bates number.

18.    In scanning Hard Copy Documents, distinct documents shall not be merged into a single record, and single Documents shall not be split into multiple records. The Producing Party shall take reasonable steps to physically and logically unitize Hard Copy Documents. For example, documents stored in a binder, folder, or similar container shall be produced in the same order as they appear in the container. Similarly, pages that are stapled or clipped shall be produced as a single document and not multiple one-page documents. The Producing Party shall undertake reasonable efforts to, or have its vendors, logically unitize (i.e. use cues such as consecutive numbering, report titles, similar headers and footers, and other logical cues that indicate the pages belong together) Hard Copy Documents that are not otherwise bound. The Producing Party shall

12

make reasonable best efforts to unitize Hard Copy Documents correctly. This provision does not obligate any Producing Party to reassemble Document Families for Hard Copy Documents that are not stored or maintained as Document Families in the location in which members of that family are found or as they are kept in the ordinary course of business. Nor shall this provision obligate any Producing Party to make whole any document that is not stored or maintained in its complete form.

**B.** **Production of Native Format ESI.**

19.    All responsive spreadsheet-application files (e.g. Microsoft Excel), personal database files (e.g. Microsoft Access), multimedia audio/visual files (e.g. MP3, WAV), presentations (e.g. Microsoft PowerPoint) as well as any other specific files agreed to between a Requesting Party and a Producing Party shall be produced in Native Format, except where such files are redacted as allowed under this ESI Protocol grounds. Responsive ESI produced in Native Format shall be produced with all Metadata contained in or associated with that file to the extent technologically possible consistent with Exhibit 1. Each ESI produced in Native Format shall be assigned a unique Bates number, and for each a single page placeholder TIFF image stamped with this unique Bates number, the phrase "PRODUCED IN NATIVE FORMAT" or similar, standardized language, and the corresponding confidentiality designation under the Protective Order will be produced. No party may attach to any pleading or any correspondence addressed to the Court, Special Master, or any adverse or third party, or submit as an exhibit at a deposition or any other judicial proceeding, a copy of any produced native format document without ensuring that either the corresponding placeholder slip sheet is attached to the document or the corresponding Bates number and confidentiality legend, as designated by the producing party, appears on the document.

**C.**     **Production of ESI (both Native and Non-Native).**

20.     All responsive ESI, except that which is produced in Native format pursuant to paragraph V(B), shall be produced as TIFF files with embedded text images with corresponding extracted full text and affiliated metadata as identified below. For documents whose Native Format is multi-media, the original native files shall be produced in addition to a TIFF placeholder and fields of metadata.

**D.**     **Appearance and Content.**

21.     No document may be intentionally manipulated to change how the source document would have appeared on a computer viewing the file without prior agreement of the Requesting Party. Therefore, subject to any appropriate redactions as allowed under this ESI Protocol, each document's electronic image shall convey the same information and image as the original document. Responsive ESI that presents imaging or formatting problems shall be promptly identified and the parties shall meet and confer in an attempt to resolve the problems. If a copy is not legible and the Requesting Party requests a legible copy, the Producing Party shall provide a legible copy within 14 days or explain why a legible copy is not available.

**E.**     **Color.**

22.     If a document is being produced in non-native format, the producing party shall provide a color image for any document where the color is reasonably necessary to decipher the complete meaning, context, or content of the document. The parties will accommodate within 14 days requests made in good faith for the production of a color image of specific documents originally produced in greyscale non-native format where the original document displayed such color and color is reasonably necessary to decipher the complete meaning, context, or content of the documents.

14

F.  **Near-native production.**

23.    If it is not practical to produce an item of responsive electronic information in Native Format, it may be produced in an agreed-upon near-native form. For example, output from databases may be produced as delimited text files or Microsoft Excel format. The parties will meet and confer regarding any good-faith request for production of documents in a different format.

G.  **Prior Production.**

24.    To the extent a response to a discovery request requires a party to provide a production set from a prior proceeding or litigation such party will produce the production set in the same format it was produced in the prior proceeding/litigation with whatever metadata fields, searchable text, organization and formats that were produced in that litigation. The production in this litigation of materials produced in a prior litigation or administrative proceeding does not relieve the producing party's obligation to search all necessary custodians, sources, and date ranges for documents responsive to discovery requests in this litigation. If the prior production materials cannot be re-produced with at least basic metadata/objective coding (i.e., Document Date, Custodian, Author, Document Type) then the Parties shall meet and confer regarding the sufficiency of such production(s) to serve as an alternative to applying the Agreed Terms to the Agreed Custodians under this ESI Protocol for the purpose of identifying responsive documents. Nothing in this paragraph shall limit the Requesting Party's ability to challenge redactions or confidentiality designations made in the prior production, to the extent the producing party does not also produce the document in unredacted format pursuant to any other discovery request.

25.    If the producing party contends that any such prior production is sufficient to identify all relevant, responsive documents in this case, then such producing party shall (a) disclose the details of the prior production, including but not limited to (i) custodians searched;

(ii) custodial and non-custodial sources searched; (iii) keyword search terms and strings used; (iv) any applicable search, collection, review, and production parameters (including agreements among the parties); and (v) the date range searched, and (b) identify the specific requests for production in this Litigation as to which the Producing Party contends no further searching is required. Should any of the information required under this paragraph not be available upon the Producing Party's exercise of reasonable diligence, the Parties shall meet and confer as to the sufficiency of the production.

26. If materials are being produced from a prior litigation or administrative proceeding, the producing party shall provide the specific litigation or proceeding in which each document was previously produced, as well as the entity who produced it. The prior production must be Bates stamped by the producing party in accordance with this ESI Protocol. If the prior production contained a Bates stream, the producing party shall Bates stamp the materials so that the underlying litigation's Bates number, the Bates number assigned in this Litigation by the Producing Party, and any corresponding confidentiality designations all appear on the face of the document and do not overlap.

27. Prior Privilege Logs. To the extent a party produces documents in this case that were produced in a prior proceeding or litigation (including, but not limited to, the Patent Cases), the producing party may produce the privilege logs from those prior proceedings/litigations rather than creating a new log for the documents that were withheld. Any such prior privilege log must be produced as a sortable Excel spreadsheet file (or comparable electronically searchable and sortable file). However, the requesting party retains the right to request additional information regarding entries in the log. If the producing party objects to producing such additional information, the requesting party retains the right to challenge the sufficiency of that privilege log.

### H.    Redacting Documents/Information and Non-Responsive Attachments.

28.    Consistent with Rule 26(b)(5)(A), a party may redact or withhold responsive documents on grounds of: (1) attorney-client privilege; (2) protection under the work-product doctrine; or (3) confidential non-responsive content. Any such redactions for privilege or non-responsiveness shall be clearly indicated on each page of the document from which information is redacted, bearing a designation that it has been redacted. The designation shall make clear the reason for the redaction (e.g., "Redacted Privileged"). Where a document contains both privileged and non-privileged responsive content or confidential non-responsive content, the producing party shall redact that material and produce the remainder of the document as redacted. For avoidance of doubt, there shall be no redaction on any other basis.

29.    Where an otherwise non-responsive attachment to a responsive parent document – or an otherwise non-responsive attachment to a parent document that has other responsive attachments or is itself responsive – is withheld because that particular attachment is non-responsive, the producing party will insert a slip-sheet in its place indicating "Non-responsive Attachment Withheld."

30.    Native Excel or other spreadsheet files that are redacted, as allowed under this ESI Order, may be redacted by overwriting the data contained in a particular cell, row, column or tab with the word "Redacted" and shall make clear the reason for the redaction (e.g., "Redacted Privilege"), *provided* that such overwriting does not impact any nonredacted cells or information in the spreadsheet (*e.g.,* if a cell redacted contains a numerical value that is used in a formula by other, non-privileged cells in the spreadsheet). If a redaction does impact nonredacted cells/information, the parties shall meet and confer to discuss. The parties acknowledge that redacting the native may alter the metadata of the produced file; however, the metadata produced

subject to Exhibit 1 will be the metadata extracted from the original native file, other than metadata containing redacted information.

31.     Native Excels or other spreadsheet files, PowerPoint or other presentation files that are redacted, as allowed under this ESI Order, may be produced as black-and-white or color (as applicable), TIFF files with embedded text, with text and related path provided in document level text files, with load files pursuant to Exhibit 2, which shall include all information contained in the original file, including, but not limited to, speaker notes and "hidden" slides, with any redaction clearly delineated. If the file contains external video or audio components, the video or audio will be produced as native files.

**I.     Confidentiality of Produced ESI.**

32.     Responsive ESI, whether produced as TIFF images or in Native Format, shall be produced pursuant to the terms of the Stipulated Protective Order. Any objections to production shall otherwise be made pursuant to the Federal Rules of Civil Procedure or the Federal Rules of Evidence. If the Producing Party is producing ESI subject to a claim that it is protected from disclosure under any protective agreement or confidentiality order, or any agreement entered into or Order issued in this matter, the word "CONFIDENTIAL" shall be stamped electronically on each page of such document.

33.     If the Producing Party is producing ESI in Native Format subject to a claim that it is protected from disclosure under any protective agreement or confidentiality order, or any agreement entered into or Order issued in this matter, then the designation shall be included in a separate field in the .dat load file, as well as the TIFF placeholder or where not produced with a placeholder, the storage device (e.g., CD, USB, or hard drive) containing such native ESI data shall be labeled with the designation "CONFIDENTIAL."

**J.**     **Production Specifications.**

34.     All productions will include these additional specifications:

34.1     Delimited image load/unitization file for images (.opt, .lfp or .dii) shall be provided pursuant to Exhibit 2;

34.2     Delimited metadata load file (.DAT) containing a field with the full path and file name to the native files produced pursuant to Exhibit 2, and shall include the metadata fields identified below (Exhibit 1);

34.3     Document level .txt files for all native documents containing extracted full text or OCR text (OCR only if extracted text is not available or if the document has been redacted);

34.4     Bates number branding and Confidentiality designation (if any) on the face of the image in a location that does not obliterate, conceal, or interfere with any information from the source document.;

34.5     A placeholder embossed with the corresponding confidentiality designation and Bates number shall be produced for all ESI produced in Native Format;

34.6     Each Bates number will: (i) be unique across the entire document production; (ii) maintain a constant length across the entire production (i.e., ABC00000001- with no space between the prefix and the number, padded to the same number of characters); (iii) contain no special characters; and (iv) be sequential within a given document. If a Bates number or set of Bates numbers is skipped in a production, the Producing Party will so note in a cover letter or production log accompanying the production.

34.7     PowerPoint slides/presentations that are produced in TIFF format will be produced with any notes or comments contained therein; and

34.8    Each of the Metadata and coding fields set forth in Exhibit 1 shall be produced for a Document. The Parties are not obligated to populate manually any of the fields in Exhibit 1 if such fields cannot be reasonably extracted from a Document, with the exception of Default Production Fields ("DPF") or "duplicate custodian" fields that are generated in the course of collection, review and production. If metadata fields are not produced because they do not exist or because they are not reasonably accessible, the Producing Party shall include the fields in the header row of the .DAT and leave the field blank for the corresponding document(s).

## VI.    FAMILY RELATIONSHIPS OF ELECTRONIC FILES

### A.    Family Relationships.

35.    Document families (as defined above) must be preserved by assigning sequential Bates numbers to all files within a parent-child group (in accordance with section V(D) of this protocol), and by providing accurate attachment ranges for those files in the metadata fields required. If a Party withholds, as allowed under this ESI Protocol, any document or portion of a document, any parent-child relationship must be similarly maintained by indicating the absence of that document or portion thereof using slip sheets containing unique Bates numbers. For example, if a Party withholds an attachment to an email as privileged, the parent email may be produced with a slip sheet in the place of the child stating that an attachment has been withheld as privileged. Similarly, if a Party withholds an email as privileged while producing the attachment, the parent-child relationship may be similarly maintained by using slip sheets containing unique Bates numbers and the grounds for withholding of the email will be similarly stated.

36.    Where a document that is part of a family is withheld, as allowed under this ESI Protocol, and its relationship to the rest of that document family is indicated using slipsheets, the

Producing Party shall provide one Bates-numbered slipsheet for the beginning page of each withheld document.

37.     So, for example, if a Party withholds a 5-page attachment to a one-page email based on privilege, and that email's Bates number is ABC-0123, the Party shall produce a single-page slipsheet bearing the legend "Withheld Privileged" and identified by Bates number ABC-0124.

38.     Where possible, the Producing Party shall provide updated metadata associating the previously withheld document with its document family.

39.     If a member of a document family that has otherwise been determined to be responsive cannot technically be processed (e.g., unsupported file format, file corruption, inaccessible password-protected document), those technical problems shall be identified and disclosed to the Requesting Party by production of a Bates-labeled slipsheet that states "Technical issue—file cannot be processed"; the associated metadata for the file with the technical problem shall be produced if technically possible. A Requesting Party may thereafter raise with the Producing Party any questions or concerns, and the parties shall meet and confer under to attempt to resolve any issues.

**B.     Image Logos.**

40.     Image file logos extracted from emails or documents should not be produced as separate documents.

## VII.     STRUCTURED DATA

41.     Structured data should be produced in a mutually agreeable data exchange format. The Parties will meet and confer to determine the potentially relevant databases at issue, including the data fields included in such databases.

## VIII.   PRODUCTION MEDIA

42.      Documents shall be produced on CD-ROM, DVD, external hard drive (with standard PC compatible interface), via secure FTP site, or such other readily accessible computer or electronic media as the Parties may hereafter agree upon (the "Production Media"). Each piece of Production Media shall include a unique identifying label and cover letter including the following information:

43.      Name of the litigation and its case number;

44.      Name of the Producing Party;

45.      Date of the production (mm/dd/yyyy);

46.      Bates number range;

47.      Confidentiality Designation; and

48.      Notes regarding any irregularities in the production (e.g., whether it is replacement Production Media (see below)).

49.      Any replacement Production Media or Documents shall cross-reference the original Production Media, clearly identify that it is a replacement, and cross-reference the Bates number range that is being replaced. Producing Parties may encrypt their Production Media and, if so, shall provide a key to decrypt the Production Media in a separate communication.

## IX.      OBJECTIONS TO ESI PRODUCTION

50.      If any formatting requirements or other specifications agreed to in this protocol are later determined by the Producing Party to be not feasible, or unduly burdensome or unreasonably costly, the Parties shall meet and confer.  During the meet-and-confer process the Producing Party shall: (i) describe the nature of the objection with reasonable particularity; (ii) provide the Requesting Party with the basis for declining to produce such ESI, including but not limited to the

22

nature of any limitations on access, and an estimate of costs that might be incurred in producing such ESI; and (iii) indicate whether the Producing Party is willing to offer an alternative. The parties shall negotiate in good faith concerning the production of any such ESI. If the Parties are unable to reach agreement, the Parties shall submit any dispute to the Court for resolution.

## X.    COST SHIFTING

A.    The costs of production of ESI under this ESI Protocol shall be borne by the producing party, and the parties agree that nothing in this ESI Protocol renders any costs or expenses of producing ESI "necessary" within the meaning of 28 U.S.C. § 1920. The producing party shall bear all costs of producing documents, if any, in non-native format, and expressly waives any right to seek reimbursement or taxing of such costs pursuant to 28 U.S.C. § 1920 or any other state or federal cost-recovery provision.

B.    If a producing party reasonably believes in good faith that producing particular ESI poses an undue burden or cost or is otherwise disproportionate, such party, at or before the time the production is due under the Federal Rules of Civil Procedure, shall describe the nature of the objection with reasonable particularity and indicate whether it is willing to offer an alternative to production. The parties shall promptly meet and confer in an attempt to resolve the issues and, if no resolution is reached, seek appropriate relief from the Court. In such case, the Court may apportion the costs of electronic discovery in accordance with and only as allowed by the Federal Rules of Civil Procedure; provided, however, that such apportionment shall not include the costs of producing documents in non-native format, as discussed above.

C.    A Party's nonresponsive or dilatory discovery tactics will be cost-shifting considerations. Likewise, a party's meaningful compliance with this ESI Protocol and efforts to promote efficiency and reduce costs will be considered in cost-shifting determinations.

D.      Nothing in this section or the remainder of this ESI Protocol precludes the requesting party from opposing any applications for shifting of costs.

E.      By entering this ESI Protocol, a party does not waive any objections it has to requests for documents. Nor does a party give up its right to review its documents for privilege. The existence of this ESI Protocol cannot be used to compel a party to produce documents without review.

## PRIVILEGE LOG

1.    **General principles.**

A.      A party may withhold from production information or documents on the grounds that such documents or information are privileged or protected from disclosure pursuant to any applicable privilege or immunity recognized by the Federal Rules of Civil Procedure, federal statute, or any other applicable federal or state rule or law, including, without limitation, the attorney-client privilege, physician-patient privilege, or work product doctrine, the common-interest privilege, the joint-defense privilege, or that such documents or information contain personally identifiable information ("pii"), or information protected by the health insurance portability and accountability act or similar patient privacy law.

B.      The party asserting a privilege for any document shall provide privilege log(s) explicitly identifying the privilege or other protection asserted for each document or portion of a document and setting forth information sufficient to enable the receiving party to assess the applicability of the privilege as provided for in Fed. R. Civ. P. 26(b)(5), including but not limited to a description of the nature of the documents, communications, or tangible things not produced and disclosed, and other information identified below.

24

2.    **Specific Privilege Log Protocols**.

      A.  Privilege logs provided in lieu of producing requested documents shall be produced within twenty-one (21) days of the production of the document group from which each logged document was withheld in its entirety or produced redacted. Privilege logs shall be produced in native Excel format. The logs shall include a separate Tab listing the names and the law firms, employers, or organizations of all attorneys referenced in the log from whom legal advice was sought or who provided the legal advice for which privilege or protection is asserted.

      B.  No Party shall be required to list on a privilege log privileged or work-product documents prepared for the prosecution or defense of this case.  However, this provision does not affect any duty under applicable law to preserve such materials.

      C.  Should a Party be unable to ascertain whether or not a document contained on the log is entirely or partially privileged or have reason to believe a particular entry on the log does not reflect privileged information, or if a Party has reason to believe family members of a logged document, including attachments, have not been logged or produced, the Party may request a meet and confer, and the Parties must meet and confer in good faith within 7 days.  If the Parties are unable to resolve the dispute after meeting and conferring, a Party may seek assistance from the Court.

      D.  For privilege logs created for this case, each subsequent log shall contain the entirety of the prior privilege log and new entries shall begin with the next document entry number following the prior served log. Each subsequent log shall identify in its title the date the subsequent log is produced to the receiving party.  When an entry is subsequently removed from a log, the entry shall remain on subsequent logs, with its previously assigned entry number and a notation "Produced Entirely" or "Produced Redacted" in a field named "Document Status."

E.  Each document withheld in whole or in part based on a claim of privilege or work product should be separately logged, and the entry for each document shall list the following information:

    i.      A unique privilege log "control number" to be retained as the unique identifier for that document throughout the life of the case;

    ii.    the beginning and end Bates numbers of the document or slipsheet representing the document, when applicable;

    iii.   the nature of the privilege or privileges asserted (*e.g.*, "attorney-client privilege" or "attorney work product");

    iv.   name(s) of the author(s) and sender(s) of the document, including an indication following the name of any attorney(s) so listed (who shall be listed by name and not solely by firm).  In addition, the law firm shall be identified for each counsel or agent on the log or through a separate listing.  The indication shall be as follows:

        (1)    (*) In-house counsel

        (2)    (**) Outside counsel

        (3)    (#) Agent of in-house counsel

        (4)    (##) Agent of outside counsel;

    v.    name(s) of the recipient(s) (*i.e.*, in the case of emails each person shown in the TO, CC, and BCC fields, with each field being separately delineated), including an indication, consistent with item iv above, following the name of any attorney(s) so listed (who shall be listed by name and not solely by firm), and the email addresses of recipients;

vi.     the dates the document was created and sent (if applicable) and last modified (if applicable);

vii.    the family relationship, including identifying whether the document is an attachment, and if so, delineating the entry or bates number of the document that it is an attachment to;

viii.   in a field labelled "Description," a brief description of the nature and contents of the communication in sufficient detail that the receiving parties will understand the specific subject matter and basis for the claim of privilege (*e.g.*, communication providing legal advice from [name] concerning [subject]);

ix.     document custodian(s); and

x.      whether the document was withheld or produced redacted.

F.  A party may not claim an entire email chain to be privileged when only some portion may be entitled to the privilege.  All such partially privileged emails must be redacted and logged as set forth above, and the rest of the email produced.

**SO ORDERED.**

Dated:  __7 - 26 - 23 .__                          _____

So stipulated and agreed to by the Parties:

DATED:  July 26, 2023

By:     /s/ Scott J. Tucker
        Scott J. Tucker
        William J. Fidurko
        **TUCKER, DYER & O'CONNELL, LLP**
        199 Wells Avenue
        Newton, MA 02459
        (617) 986-6226

By:   /s/ Peter D. St. Phillip
       Peter D. St. Phillip (*pro hac vice*)
       Uriel Rabinovitz (*pro hac vice*)
       Renee Nolan (*pro hac vice*)
       Charles Kopel (*pro hac vice*)
       **LOWEY DANNENBERG, P.C.**
       44 South Broadway, Suite 1100
       White Plains, NY 10601
       (914)997-0500

       *Counsel for Plaintiff Premera Blue*
       *Cross and the Proposed Class*

By:   /s/ Joshua Barlow
       Joshua Barlow, Esq., BBO #667472
       **Arnold & Porter Kaye Scholer LLP**
       200 Clarendon Street, 53rd Floor
       Boston, MA 02116
       Telephone: (617) 351-8052
       joshua.barlow@arnoldporter.com

By:   /s/ Fred A. Kelly, Jr.
       Fred A. Kelly, Jr., Esq., BBO #544046
       **Arnold & Porter Kaye Scholer LLP**
       200 Clarendon Street, 53rd Floor
       Boston, MA 02116
       Telephone: (617) 351-8051
       fred.kelly@arnoldporter.com

By:   /s/ H. Tiffany Jang
       H. Tiffany Jang Esq., BBO #691380
       Arnold & Porter Kaye Scholer LLP
       200 Clarendon Street, 53rd Floor
       Boston, MA 02116
       Telephone: (617) 351-8053
       tiffany.jang@arnoldporter.com

       *Attorneys for Takeda Pharmaceutical*
       *Company Limited, Takeda*
       *Pharmaceuticals U.S.A., Inc, and*
       *Takeda Pharmaceuticals America, Inc*

## EXHIBIT 1

## FIELDS and METADATA TO BE PRODUCED

1.      The load files accompanying Hard Copy documents will include the following objective coding fields, to the extent applicable:

| Field | Field Description |
|---|---|
| BEGBATES (DPF) | First Bates identifier of item |
| ENDBATES (DPF) | Last Bates identifier of item |
| BEGATTACH (DPF) | Starting Bates number of a document family |
| ENDATTACH (DPF) | Ending Bates number of a document family |
| PAGECOUNT (DPF) | Number of pages |
| TEXTLINK (DPF) | Link to text file for the document |

2.      The following metadata fields shall be included in Load files accompanying ESI, to the extent available, and/or unredacted:[1]

| Field | Field Description for Electronic Documents | Field Description for Emails | Field Description for Calendar Entries |
|---|---|---|---|
| BEGBATES (DPF) | First Bates identifier of item | First Bates identifier of item | First Bates identifier of item |
| ENDBATES (DPF) | Last Bates identifier of item | Last Bates identifier of item | Last Bates identifier of item |

---

[1] These metadata specifications do not apply to the format of text and instant messages. The parties will meet and confer regarding the form and format of such productions, including metadata to be included in any productions of such ESI.

1

| Field | Field Description for Electronic Documents | Field Description for Emails | Field Description for Calendar Entries |
|---|---|---|---|
| BEGATTACH (DPF) | Starting Bates number of a document family | Starting Bates number of a document family | Starting Bates number of a document family |
| ENDATTACH (DPF) | Ending Bates number of a document family | Ending Bates number of a document family | Ending Bates number of a document family |
| PAGECOUNT (DPF) | Number of pages | Number of pages | Number of pages |
| CUSTODIAN | The custodian of the document even if de-duplicated prior to production | The custodian of the document even if de-duplicated prior to production | The custodian of the document even if de-duplicated prior to production |
| DUPLICATE CUSTODIAN | All custodians of the document only if a Producing Party elects to de-duplicate across custodians | All custodians of the document only if a Producing Party elects to de-duplicate across custodians | All custodians of the document only if a Producing Party elects to de-duplicate across custodians |
| CONFIDENTIAL | Confidentiality designation | Confidentiality designation | Confidentiality designation |
| AUTHOR | Document author from Metadata | | |

2

| Field | Field Description for Electronic Documents | Field Description for Emails | Field Description for Calendar Entries |
|---|---|---|---|
| EMAIL THREAD ID (or CONVERSATION INDEX) | | Unique identification number that permits threading of email conversations. For instance, unique MS Outlook identification Number ("PR_CONVERSATION_INDEX") is 22 bytes in length, followed by zero or more child blocks each 5 bytes in length, that facilitates use of email threading. | |
| THREAD INDEX | | Message header identifier, distinct from "PR_Conversation_Index", that permits threading of email chains in review software. | |
| FROM | | Sender of message | Sender of calendar invite |
| TO | | Recipient(s) of message or calendar invite | Recipient(s) of calendar invite |

| Field | Field Description for Electronic Documents | Field Description for Emails | Field Description for Calendar Entries |
|---|---|---|---|
| CC | | Copied recipient(s) of message or calendar invite | |
| BCC | | Blind copied recipient(s) of message or calendar invite | |
| SUBJECT | | Subject of message | Subject of calendar invite |
| SENTDATE | | The sent date of the message in the format MM/DD/YYYY | Date calendar invite sent (if any) |
| SENTTIME | | The sent time of the message in the format HH:mm:ss | Time calendar invite sent (if any) |
| RECEIVEDDATE | | The received date of the message in the format MM/DD/YYYY | The received date of the invite in the format MM/DD/YYYY |
| RECEIVEDTIME | | The received time of the message in the format HH:mm:ss | The received time of the invite in the format HH:mm:ss |
| FILENAME | Contents of this metadata field, or an equivalent | Contents of this metadata field, or an equivalent | Contents of this metadata field, or an equivalent |
| FILEEXTEN | File extension | | |

4

| Field | Field Description for Electronic Documents | Field Description for Emails | Field Description for Calendar Entries |
|---|---|---|---|
| FILESIZE | Size of the file in bytes | Size of the file in bytes | Size of the file in bytes |
| SourceFilePath (or LOCATION) | The directory structure or path where the original file was stored on the party's source computer system, ending in the filename. | The email folder where the original file was stored. | |
| HASH | MD5 or SHA1 hash of the document | MD5 or SHA1 hash of the email | MD5 or SHA1 hash of the calendar invite |
| ITEMTYPE | Identifies whether the file is an email, attachment, or stand-alone efile. | Identifies whether the file is an email, attachment, or stand-alone efile. | Identifies whether the file is an email, attachment, or stand-alone efile. |
| NATIVELINK (DPF) | Link to native file (if any) | Link to native file (if any) | Link to native file (if any) |
| TEXTLINK (DPF) | Link to text file for the document | Link to text file for the email | Link to text file for the calendar invite |
| TITLE | Title from a document's properties | | |
| AUTHOR | Document author from metadata | | |
| DATECREATED | Date file was created | | |
| TIMECREATED | Time file was created | | |
| DATEMODIFIED | Date file was last modified | | |
| TIMEMODIFIED | Time file was last modified | | |
| Confidential | Confidentiality designation for the document. | Confidentiality designation for the document. | Confidentiality designation for the document. |

5

Such metadata field values will be extracted from the native file and will be produced to the extent available at the time of collection and processing, except that they may be redacted if privileged or if the metadata field values contain information protected by law or Court Order. This list of fields does not create any obligation to create or manually code fields, except the duplicate custodian field, that do not exist as part of the original metadata of the document.

## EXHIBIT 2

### REQUESTED LOAD FILE FORMAT FOR ESI

1.   **Delimited Text File**. A delimited text file (.DAT File) containing the fields listed in Exhibit A should be provided. The delimiters for the file should be Concordance defaults:

- Comma – ASCII character 20 (¶)

- Quote – ASCII character 254 (þ)

- Newline – ASCII character 174 (®)

2.   **Image Cross-Reference File (.opt).** The Opticon cross-reference file is a comma delimited file consisting of six fields per line. There must be a line in the cross-reference file for every image in the database. The format for the file is as follows:

ImageID,VolumeLabel,ImageFilePath,DocumentBreak,FolderBreak,BoxBreak,PageCount.

| | |
|---|---|
| ImageID: | The unique designation that Concordance and Opticon use to identify an image. This should be the BegBates Number of the Document. |
| VolumeLabel: | The name of the volume. |
| ImageFilePath: | The full path to the image file. |
| DocumentBreak: | If this field contains the letter "Y," then this is the first page of a Document. If this field is blank, then this page is not the first page of a Document. |
| FolderBreak: | Leave empty. |
| BoxBreak: | Leave empty. |
| PageCount: | Number of pages in the Document. |

7

3.  **Sample Data**

    PROD00000001,VOL001,E:\100\ PROD00000001.TIF,Y,,2

    PROD00000002, VOL001,E:\100\ MT00000002.TIF,,,,

    PROD00000003, VOL001,E:\100\ MT00000003.TIF,Y,,,4

    PROD00000004, VOL001,E:\100\ MT00000004.TIF,,,,

    PROD00000005, VOL001,E:\100\ MT00000005.TIF,,,,

    PROD00000006, VOL001,E:\100\ MT00000006.TIF,,,,