# UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

PREMERA BLUE CROSS, on behalf of itself and all others similarly situated,

               Plaintiff,

    vs.

TAKEDA PHARMACEUTICAL COMPANY LIMITED, TAKEDA PHARMACEUTICALS U.S.A., INC., and TAKEDA PHARMACEUTICALS AMERICA, INC.,

               Defendants.

Civil Action No. 1:23-cv-11254

**LEAVE TO FILE ENLARGED REPLY BRIEF GRANTED ON 8/28/2023 [ECF No. 43]**

## TAKEDA'S REPLY MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION TO DISMISS PREMERA'S CLASS ACTION COMPLAINT

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ......................................................................................... ii

I.      INTRODUCTION ...........................................................................................1

II.     Premera Has Failed To Plead Its Own Standing, Requiring Dismissal ..............................1

III.    Premera's State Law Claims Fail ....................................................................4

        A.      Antitrust Claims .........................................................................5

        B.      Consumer Protection Claims ......................................................7

                1.      Premera Does Not Contest Dismissal Of Several Claims
                        (Kansas, New Jersey, North Carolina, Oklahoma) ......................7

                2.      Premera's Erroneous Rebuttals Doom Its Consumer Claims ......................7

        C.      Unjust Enrichment Claims ......................................................13

                1.      Premera Abandoned Its Colorado, Delaware, Georgia,
                        Idaho, Indiana, Kentucky, Louisiana, Montana, New
                        Jersey, Oklahoma, Puerto Rico, Tennessee, Washington,
                        and Wyoming Unjust Enrichment Claims ..............................13

                2.      Premera's Unjust Enrichment Claims In Jurisdictions That
                        Follow *Illinois Brick* Disallowing Indirect Purchaser
                        Claims Must Be Dismissed ...............................................13

                3.      Premera's Unjust Enrichment Claims That Rely On Other
                        Claims Fail .................................................................14

                4.      Premera's Unjust Enrichment Claims in California, District
                        of Columbia, Florida, Iowa, Kansas, Maine, Maryland,
                        Michigan, Minnesota, Nebraska, Nevada, New Mexico,
                        New York, North Carolina, North Dakota, Oregon, Rhode
                        Island, South Dakota, Tennessee, Vermont, and Wisconsin
                        Are Duplicative .............................................................15

IV.     CONCLUSION..............................................................................................15

# TABLE OF AUTHORITIES

<u>Cases</u>

*Abbott Labs. v. Durrett*,
    746 So. 2d 316 (Ala. 1999) ......................................................................................... 6

*Action Auto Glass v. Auto Glass Specialists*,
    134 F.Supp.2d 897 (W.D. Mich. 2001) ..................................................................... 10

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009) ................................................................................................ 1, 4

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007) ................................................................................................ 1, 4

*Curet-Velàzquez v. ACEMLA De P.R., Inc.*,
    656 F.3d 47 (1st Cir. 2011) ........................................................................................ 7

*Elkins v. Microsoft Corp.*,
    817 A.2d 9 (Vt. 2002) .............................................................................................. 12

*Frullo v. Landenberger*,
    814 N.E.2d 1105 (Mass. 2004) ................................................................................ 10

*Gibbons v. J. Nuckolls, Inc.*,
    216 S.W.3d 667 (Mo. 2007) ............................................................................... 14, 15

*Hartig Drug Co. v. Senju Pharm. Co.*,
    836 F.3d 261 (3d Cir. 2016) ....................................................................................... 4

*Illinois Brick Co. v. Illinois*,
    431 U.S. 720 (1977) .......................................................................................... passim

*In re Actos End Payor Antitrust Litig.*,
    2015 WL 5610752 (S.D.N.Y. Sept. 22, 2015) ........................................................... 5

*In re Actos End Payor Antitrust Litig.*,
    417 F.Supp.3d 352 (S.D.N.Y. 2019) ......................................................................... 5

*In re Aggrenox Antitrust Litig.*,
    2016 WL 4204478 (D. Conn. Aug. 9, 2016) ............................................................. 9

*In re Aggrenox Antitrust Litig.*,
    94 F.Supp.3d 224 (D. Conn. 2015) ........................................................................... 5

*In re Asacol Antitrust Litig.*,
    2016 WL 4083333 (D. Mass. July 20, 2016) .......................................................... 10

*In re Asacol Antitrust Litig.*,
  907 F.3d 42 (1st Cir. 2018) .................................................................... 1, 2, 3, 4

*In re Cast Iron Soil Pipe And Fittings Antitrust Litig.*,
  2015 WL 5166014 (E.D. Tenn. June 24, 2015) ........................................... 14

*In re DDAVP Indirect Purchaser Antitrust Litig.*,
  903 F.Supp.2d 198 (S.D.N.Y. 2012) ........................................................... 12

*In re Dig. Music Antitrust Litig.*,
  812 F.Supp.2d 390 (S.D.N.Y. 2011) ............................................................. 6

*In re Dynamic Random Access Memory Antitrust Litig.*,
  516 F.Supp.2d 1072 (N.D. Cal. 2007) .......................................................... 8

*In re Effexor Antitrust Litig.*,
  357 F.Supp.3d 363 (D.N.J. 2018) ................................................................. 7

*In re Express Scripts, Inc., Pharmacy Benefits Mgmt. Litig.*,
  2006 WL 2632328 (E.D. Mo. Sept. 13, 2006) ............................................. 10

*In re Flonase Antitrust Litig.*,
  610 F.Supp.2d 409 (E.D. Pa. 2009) .......................................................... 1, 8

*In re Ford Motor Co. E-350 Van Prods. Liab. Litig. (No. II)*,
  2010 WL 2813788 (D.N.J. July 9, 2010) ..................................................... 10

*In re Generic Pharm. Pricing Antitrust Litig.*,
  368 F.Supp.3d 814 (E.D. Pa. 2019) .................................................. 6, 13, 14

*In re Humira (Adalimumab) Antitrust Litig.*,
  465 F.Supp.3d 811 (N.D. Ill. 2020) .............................................................. 8

*In re Lidoderm Antitrust Litig.*,
  103 F.Supp.3d 1155 (N.D. Cal. 2015) ................................................. 8, 9, 13

*In re Lipitor Antitrust Litig.*,
  336 F.Supp.3d 395 (D.N.J. 2018) ................................................................. 9

*In re Liquid Aluminum Sulfate Antitrust Litig.*,
  2017 WL 3131977 (D.N.J. July 20, 2017) ..................................................... 7

*In re Lithium Ion Batteries Antitrust Litig.*,
  2014 WL 4955377 (N.D. Cal. Oct. 2, 2014) ................................................ 11

*In re Loestrin 24 Fe Antitrust Litig.*,
  410 F.Supp.3d 352 (D.R.I. 2019) ......................................................... passim

*In re Namenda Indirect Purchaser Antitrust Litig.*,
   2021 WL 2403727 (S.D.N.Y. June 11, 2021) ................................................ 14

*In re New Motor Vehicles Canadian Exp. Antitrust Litig.*,
   350 F.Supp.2d 160 (D. Me. 2004) ................................................................ 13

*In re Nexium (Esomeprazole) Antitrust Litig.*,
   968 F.Supp.2d 367 (D. Mass. 2013) ........................................................... 4, 6

*In re Niaspan Antitrust Litig.*,
   42 F.Supp.3d 735 (E.D. Pa. 2014) ................................................................. 8

*In re Novartis & Par Antitrust Litig.*,
   2019 WL 3841711 (S.D.N.Y. Aug. 14, 2019)........................................... 13, 14

*In re Packaged Seafood Prods. Antitrust Litig.*,
   242 F.Supp.3d 1033 (S.D. Cal. 2017) .................................................. 11, 12, 14

*In re Pharm. Indus. Average Wholesale Price Litig.*,
   491 F.Supp.2d 20 (D. Mass. 2007) ................................................................ 9

*In re Pork Antitrust Litig.*,
   495 F.Supp.3d 753 (D. Minn. 2020)........................................................ 11, 14

*In re Propranolol Antitrust Litig.*,
   249 F.Supp.3d 712 (S.D.N.Y. 2017)............................................................... 6

*In re Restasis (Cyclosporine Ophthalmic Emulsion) Antitrust Litig.*,
   355 F.Supp.3d 145 (E.D.N.Y. 2018) ............................................................ 11

*In re Sensipar (Cinacalcet Hydrochloride Tablets) Antitrust Litig.*,
   2022 WL 736250 (D. Del. Mar. 11, 2022) ..................................... 8, 10, 11, 14

*In re Seroquel XR (Extended Release Quetiapine Fumarate) Antitrust Litig.*,
   2022 WL 2438934 (D. Del. July 5, 2022) ................................................... 5, 7

*In re Solodyn (Minocycline Hydrochloride) Antitrust Litig.*,
   2015 WL 5458570 (D. Mass. Sept. 16, 2015) ........................................ 6, 9, 14

*In re Suboxone (Buprenorphine Hydrochloride & Naloxone) Antitrust Litig.*,
   64 F.Supp.3d 665 (E.D. Pa. 2014) ............................................................... 15

*In re TFT-LCD (Flat Panel) Antitrust Litig.*,
   2013 WL 6327490 (N.D. Cal. Dec. 3, 2013).................................................. 12

*In re TFT-LCD Antitrust Litig.*,
   599 F.Supp.2d 1179 (N.D. Cal. 2009) ........................................................... 12

*In re Vascepa Antitrust Litig. Indirect Purchaser*,
2023 WL 2182046 (D.N.J. Feb. 23, 2023) ............................................................... 13, 14

*In re Zetia (Ezetimibe) Antitrust Litig.*,
2019 WL 1397228 (E.D. Va. Feb. 6, 2019),
*adopted by* 400 F.Supp.3d 418 (2019) .................................................................. passim

*Kopel v. Kopel*,
229 So. 3d 812 (Fla. 2017) .................................................................................. 14

*LaChance v. U.S. Smokeless Tobacco Co.*,
931 A.2d 571 (N.H. 2007) ................................................................................... 11

*Landsman v. Maryland Home Improvement Com'n*,
839 A.2d 743 (Md. Ct. Spec. App. 2003) ............................................................... 5

*Laughlin v. Evanston Hosp.*,
550 N.E.2d 986 (Ill. 1990) .................................................................................. 9

*Mahoney v. Found. Med., Inc.*,
342 F.Supp.3d 206 (D. Mass. 2018) ................................................................. 7, 13

*Miami Prod. & Chem. Co. v. Olin Corp.*,
2022 WL 3701159 (W.D.N.Y. Aug. 26, 2022) .................................................... 14

*Miami Prods. & Chem. Co. v. Olin Corp.*,
546 F.Supp.3d 223 (W.D.N.Y. 2021) ............................................................... 3, 8

*Perkins v. City of Attleboro*,
969 F.Supp.2d 158 (D. Mass. 2013) ..................................................................... 7

*Picone v. Shire PLC*,
2017 WL 4873506 (D. Mass. Oct. 20, 2017) .......................................................... 2

*Plumbers' Union Local No. 12 Pension Fund v. Nomura Asset Acceptance Corp.*,
632 F.3d 762 (1st Cir. 2011) ............................................................................... 2

*Sandee's Catering v. Agri Stats, Inc.*,
2020 WL 6273477 (N.D. Ill. Oct. 26, 2020) .......................................................... 12

*Sergeants Benevolent Ass'n Health & Welfare Fund v. Actavis, PLC*,
2018 WL 7197233 (S.D.N.Y. Dec. 26, 2018) ..................................................... 5, 14

*Shady Grove Orthopedic Assocs. v. Allstate Ins. Co.*,
559 U.S. 393 (2010) ............................................................................................ 6

*Shannon v. Boise Cascade Corp.*,
805 N.E.2d 213 (Ill. 2004) .................................................................................. 9

*Sheet Metal Workers Local 441 Health & Welfare Plan v. GlaxoSmithKline, PLC,*
737 F.Supp.2d 380 (E.D. Pa. 2010) ................................................................. 3, 8, 9, 11

*Soto v. Bushmaster Firearms Int'l, LLC ,*
202 A.3d 262 (2019) ............................................................................................. 8

*State ex rel. Wasden v. Daicel Chem. Indus., Ltd.,*
106 P.3d 428 (2005) .............................................................................................. 8

*State v. Polley,*
2 S.W.3d 887 (Mo. Ct. App. 1999) ..................................................................... 10

*Stinson v. Union Mut. Fire Ins. Co.,*
2019 WL 13061475 (Vt. Super. Apr. 01, 2019) ................................................. 12

*Synergistic Int'l, LLC v. Korman.,*
402 F.Supp.2d 651 (E.D. Va. 2005) .................................................................... 13

*Toy v. Metro. Life Ins. Co.,*
928 A.2d 186 (Pa. 2007) ..................................................................................... 12

*TransUnion LLC v. Ramirez,*
141 S.Ct. 2190 (2021) ........................................................................................... 3

*United Food & Commer. Workers Local 1776 & Participating Emp'rs Health &*
*Welfare Fund v. Teikoku Pharma USA, Inc.,*
74 F.Supp.3d 1052 (N.D. Cal. 2014) .................................................................. 13

*Vacco v. Microsoft Corp.,*
793 A.2d 1048 (Conn. 2002) ................................................................................ 8

*Weinberg v. Sun Co., Inc.,*
777 A.2d 442 (Pa. 2001) ..................................................................................... 11

*Zine v. Chrysler Corp.,*
600 N.W. 2d 384 (Mich. Ct. App. 1999) ............................................................ 10

## **Rules**

Federal Rule of Civil Procedure 12(b)(1) .............................................................. 4

Federal Rule of Civil Procedure 12(b)(6) .............................................................. 4

Federal Rule of Civil Procedure Rule 23 ........................................................... 3, 6

Federal Rule of Civil Procedure Rule 8 ............................................................. 1, 4

## I.    INTRODUCTION

By its opposition, Premera confirms what Takeda had already pointed out to the Court: Premera failed to plead any facts sufficient to establish its standing to assert its claims. Premera concedes that its Complaint does not identify which, if any, states where it made purchases, improperly claiming for the first time in its brief that it made purchases in 39 unspecified jurisdictions. Given *Illinois Brick*'s restriction on indirect purchaser claims, this failure alone warrants dismissal of Premera's Complaint. Premera improperly seeks refuge under the First Circuit's *In re Asacol Antitrust Litig.* decision, but *Asacol* does not support Premera. *Asacol* is inapposite because, unlike the plaintiffs in that case, Premera has failed to first establish that it has standing to bring its own claims (even in those states where it does business—Washington and Alaska). That failure alone requires dismissal.

For the state-by-state analysis of Premera's 107-plus claims, Premera effectively concedes that it fails to meet Rule 8 pleading standards by expressly withdrawing two claims and failing to address Takeda's arguments as to at least sixteen others. For those claims that Premera tries to support, it often relies on irrelevant and inapposite case law (or no case law at all), misquotes its cited authorities, and repeatedly fails entirely to address Takeda's cited authorities that are directly on point. Whether viewed holistically for failure to meet Rule 8 under *Twombly* and *Iqbal*, or individually for failure to effectively support its stated claims, Premera's Complaint should be dismissed in its entirety.

## II.    Premera Has Failed To Plead Its Own Standing, Requiring Dismissal

Premera concedes that its Complaint does not specifically identify the states where it made purchases for which it seeks damages. Premera Blue Cross's Memorandum of Law in Opposition to Takeda's Motion to Dismiss the Class Action Complaint ("Opp."), ECF No. 41 at 6 n.3, 9. That pleading failure is fatal to Premera's standing because not all states have repealed *Illinois Brick*—including Alaska and Washington where Premera operates. *See generally In re Flonase Antitrust Litig.*, 610 F.Supp.2d 409 (E.D. Pa. 2009); *see also* §§ III.B.2, III.C.1, and III.C.2, *infra*. It is Premera's burden to establish its own Article III standing. *See* Takeda's Memorandum of Law in

Support of its Motion to Dismiss Premera's Class Action Complaint ("Opening Brief"), ECF No. 34 at 4.

Faced with this pleading deficiency, Premera claims for the first time in its Opposition that it made purchases in 39 of the 50 jurisdictions listed in its proposed class definition. Opp. at 2, 6 n.3, 9. This is an improper response as Premera (1) cannot amend its Complaint through its briefing,[1] and (2) does not identify any of the 39 states or its basis to claim it made purchases there.

Premera next tries to salvage its Complaint by pointing to the First Circuit's decision in *In re Asacol Antitrust Litig.*, 907 F.3d 42 (1st Cir. 2018), but *Asacol* is inapposite. In *Asacol*, a drug manufacturer argued at class certification that "because the named plaintiffs only made purchases in four states, they lack Article III standing to assert claims under the laws of states in which they did not make purchases." 907 F.3d at 47. *Asacol*'s premise is that the named plaintiffs had standing under the laws of at least one jurisdiction–a threshold requirement that preceded the Court's focal inquiry into whether the named plaintiffs there could ***also*** "assert claims under the laws of states in which they did not make purchases...on behalf of class members whose claims arise under the laws [of those other states]." *Id.*, at 47-48. That issue is not now before this Court.

Indeed, the *Asacol* Court noted that "[t]he named plaintiffs in this case indisputably have standing to litigate ***their own*** claims against Warner....Warner challenges, instead, the named plaintiffs' standing to bring claims ***on behalf of class members whose claims arise under the laws of the twenty-two states within which no named plaintiff has either resided or purchased*** the relevant Warner products during the class period." *Id.* at 47-48; *see also Plumbers' Union Local No. 12 Pension Fund v. Nomura Asset Acceptance Corp.*, 632 F.3d 762, 768, 771 (1st Cir. 2011) (where no named plaintiff purchased six of eight trust certificates at issue, plaintiffs lacked standing to pursue those claims because "named plaintiffs [had] no claim *on their own behalf* based on trust certificates that they did not buy") (emphasis in original). By its Motion, Takeda does not

---

[1] *See Picone v. Shire PLC*, 2017 WL 4873506, at *6 (D. Mass. Oct. 20, 2017) ("it is axiomatic that a [p]laintiff may not amend its pleadings in the opposition memorandum") (internal citation omitted). All emphasis added and internal citations and quotations omitted unless otherwise stated.

simply challenge Premera's standing to represent putative class members who made purchases within other states; it challenges ***Premera's own standing*** to bring its case in the first place.[2]

Premera further argues, citing *Asacol*, that it need not name the states in which it made purchases. But there was no dispute in *Asacol* that the named plaintiffs had standing to pursue claims under the laws of states in which they made purchases or the identity of those states. Premera cites no authority to the contrary. Instead, Premera attacks Takeda's assertion that it "is limited to claims arising under the law of its home states Washington and Alaska" as an "improper assumption" even though Premera concedes that it "did not specifically allege the states of its own purchases" and does not dispute that in such circumstances courts look to a plaintiff's place of incorporation and principal place of business. Opening Brief at 6; Opp. at 9. Premera then improperly claims that it made purchases in 39 unspecified states, despite failing to make that allegation in its Complaint. Opp. at 2, 6 n.3, 9.

For Alaska and Washington—the only two states where it can reasonably be inferred from the Complaint that Premera might have made purchases and thus might have standing—Premera's claims cannot survive. Premera has not pled any claims under either state's antitrust law or Washington's consumer protection law. Opening Brief at 5-6. Premera's Alaska consumer protection claim fails because "no court has construed Alaska's consumer protection statute...to permit claims based on alleged antitrust and monopolization conduct by indirect purchasers." *Miami Prods. & Chem. Co. v. Olin Corp.*, 546 F.Supp.3d 223, 236-37 (W.D.N.Y. 2021), *see also* Opening Brief at 7, 13; § III.B.2, *infra*. And Premera's unjust enrichment claims under both states' laws fail because neither state has repealed *Illinois Brick*. Opening Brief at 24, 28; §§ III.B.2, III.C.2, *infra*.

Finally, for all its hand-wringing over *Asacol* (*e.g.*, claiming that "Takeda [] omits relevant

---

[2] Premera's reliance on *Sheet Metal Workers Local 441 Health & Welfare Plan v. GlaxoSmithKline, PLC*, 737 F.Supp.2d 380 (E.D. Pa. 2010) is thus misplaced. As Premera recognizes, the defendant there was "not challenging Plaintiffs' standing to bring ***their own claims***; it [was] challenging their standing to bring claims on behalf of the class...." Opp. at 8. For the same reasons, Premera's detour into class certification and Rule 23 issues (Opp. at 2, 8) rings hollow. *See TransUnion LLC v. Ramirez*, 141 S.Ct. 2190, 2208 (2021) ("Every class member must have Article III standing in order to recover individual damages.").

controlling precedent," by "fail[ing] to even mention *Asacol*" (Opp. at 1-2, 6-7)), it is Premera that eschews *Asacol* by claiming that "Takeda's argument conflates constitutional and statutory standing." Opp. at 10. In fact, *Asacol* addressed the issue as a matter of Article III standing. When considering the question presented, the Court specifically noted that "we have trained our Article III focus in class actions on the incentives of the named plaintiffs to adequately litigate issues of importance to them" and "[f]inding Article III standing otherwise satisfied in this case is in accord with the decisions of our sister circuits[.]" *Asacol*, 907 F.3d at 48-50; *see also In re Nexium (Esomeprazole) Antitrust Litig.*, 968 F.Supp.2d 367, 404 (D. Mass. 2013) ("This Court agrees with the Defendants' contention that Article III standing must be resolved at the motion-to-dismiss stage[,]" and finding standing satisfied based on "named plaintiffs' allegations that they paid or reimbursed others for Nexium, at supracompetitive prices, in seventeen of the twenty-six states which have passed *Illinois Brick*-repealer statutes").[3]

*Asacol* did not address a plaintiff's failure to plead its own standing and therefore cannot support Premera's arguments or ameliorate its pleading failures. Premera's Complaint must be dismissed for failing to sufficiently allege its own Article III standing.

## III. Premera's State Law Claims Fail

Facing a blunderbuss complaint, like Premera's Complaint here, the court in *Aggrenox* declared that:

> plaintiffs cannot simply enumerate a long list of state-law claims for states where they might otherwise have no available antitrust recovery and rely on the defendants and the court to sort out whether or how those laws can act as surrogates for antitrust law. I need not rule on the many particular arguments the defendants make for individual state claims or subsets of them, because the...plaintiffs...have not pleaded state-law consumer-protection or unjust-enrichment claims sufficient to satisfy Rule 8 under *Twombly* and *Iqbal*. The defendants' motions to dismiss are granted with respect to all such claims....

---

[3] Even if the issue were a matter of "statutory standing" (as Premera argues and some courts outside the First Circuit have held), with no standing to bring a claim of its own—whether statutorily or constitutionally—Premera's Complaint must be dismissed under both Federal Rule of Civil Procedure 12(b)(1) and 12(b)(6). *See Hartig Drug Co. v. Senju Pharm. Co.*, 836 F.3d 261, 270 (3d Cir. 2016) ("it does not matter whether the [antitrust] standing inquiry is characterized as 'prudential' or 'statutory'...neither deprives us of Article III jurisdiction and both bar a plaintiff's ability to recover.").

*In re Aggrenox Antitrust Litig.*, 94 F.Supp.3d 224, 255-56 (D. Conn. 2015).[4]  While Premera apparently faults Takeda for "unleash[ing] a deluge of caselaw" and claims that it "counters Takeda's arguments exhaustively, claim-by-claim" (Opp. at 2), the reality is that (1) Premera chose to plead a 50-jurisdiction complaint and then (2) expressly dropped two claims (*see id.* at 19 n.8), while (3) failing to address many others.  *See* §§ III.B.1 and III.C.1, *infra*.

Given the sheer number of claims—and corresponding arguments made by Takeda in support of its Motion—Takeda does not here provide a point-by-point rebuttal to every counter-point raised by Premera.  Rather, Takeda addresses only Premera's most egregious and erroneous arguments,[5] otherwise standing on the arguments and case citations found in its Opening Brief.

### A.    Antitrust Claims[6]

**Alabama**:  Premera argues that its Alabama claim survives because it has alleged a "nationwide antitrust violation" that had an impact in, *inter alia*, Alabama.  Opp. at 14-15.  None of the cases cited by Premera addressed an Alabama antitrust claim, which requires not merely intrastate effects or impact, but intrastate conduct—something Premera does not argue it has alleged.  *Compare id.* (citing *In re Generic Pharm. Pricing Antitrust Litig.*, 368 F.Supp.3d 814, 835-36

---

[4] *See also In re Actos End Payor Antitrust Litig.*, 2015 WL 5610752, at *27-29 (S.D.N.Y. Sept. 22, 2015) (same); *accord In re Actos End Payor Antitrust Litig.*, 417 F.Supp.3d 352, 358 (S.D.N.Y. 2019) ("On September 22, 2015, the Court dismissed EPPs' prior complaint *in its entirety* with prejudice. EPPs then appealed the dismissal of its two monopolization claims").

[5] For example, Premera argues that the Maryland Antitrust Act, which was "expanded in October 2017," is "remedial in nature, and therefore applies retroactively," citing *Landsman v. Maryland Home Improvement Com'n*, 839 A.2d 743 (Md. Ct. Spec. App. 2003).  Opp. at 13-14.  Premera badly misquotes *Landsman*.  The court there noted that "a statute that affects substantive rights is presumed to operate prospectively" and if "the statute provides a new form of relief that itself constitutes a substantive right, it is not purely remedial, and will not be presumed to apply retroactively."  839 A.2d at 749.  Accordingly, courts that have considered Maryland's "expanded" antitrust statute, which was amended to give indirect purchasers a substantive right (*i.e.*, a new cause of action that they did not previously have), have refused to apply the statute retroactively.  *See In re Seroquel XR (Extended Release Quetiapine Fumarate) Antitrust Litig.*, 2022 WL 2438934, *19 (D. Del. July 5, 2022) (citing *Landsman*, noting that "[n]othing in the Maryland Antirust Act states or suggests that the 2017 amendment applies retroactively" and "since the amendment created a substantive right...it applies only prospectively.").

[6] Premera does not appear to contest that its Florida antitrust claim should be dismissed.  While Premera brings both a Florida antitrust claim (Complaint, ¶ 253.e) and a Florida consumer protection claim (Complaint, ¶ 262.e), Premera concedes that it is pursuing only a claim under the Florida Deceptive and Unfair Trade Practices and not any claim under the Florida Antitrust Act (for which Premera concedes it lacks standing).  Opp. at 11 ("Premera is pursuing claims under the Florida Deceptive and Unfair Trade Practices Act...not the Florida Antitrust Act"); *see also Sergeants Benevolent Ass'n Health & Welfare Fund v. Actavis, PLC*, 2018 WL 7197233, at *22, 39-40 (S.D.N.Y. Dec. 26, 2018) (dismissing antitrust claim but allowing consumer claim to proceed).

(E.D. Pa. 2019); *In re Solodyn (Minocycline Hydrochloride) Antitrust Litig.*, 2015 WL 5458570, at *16 (D. Mass. Sept. 16, 2015); *In re Loestrin 24 Fe Antitrust Litig.*, 410 F.Supp.3d 352, 375 (D.R.I. 2019); and *In re Dig. Music Antitrust Litig.*, 812 F.Supp.2d 390, 407 (S.D.N.Y. 2011)); with *In re Propranolol Antitrust Litig.*, 249 F.Supp.3d 712, 728 (S.D.N.Y. 2017) (parsing out and dismissing Alabama antitrust claim, noting that "Alabama law does impose such a requirement" that defendants conspired or manufactured Propranolol within Alabama) (citing *Abbott Labs. v. Durrett*, 746 So. 2d 316, 339 (Ala. 1999)).[7]

**Illinois**:  Premera relies on *Shady Grove Orthopedic Assocs. v. Allstate Ins. Co.*, 559 U.S. 393 (2010) to argue that it may maintain a claim under Illinois antitrust law.  Opp. at 12-13.  Premera ignores three courts in this Circuit that have expressly rejected Premera's proffered reading of *Shady Grove*.  In *Nexium*, the district court considered how *Shady Grove* maps onto Illinois antitrust law, concluding that Justice Stevens's concurring opinion is controlling.[8]  968 F.Supp.2d at 408-09.  Under that analysis, *Nexium* dismissed the claim, concluding that Rule 23's preemption of Illinois antitrust law would be "an application of a federal rule that effectively abridges, enlarges, or modifies a state-created right or remedy."  *Id.* at 409 (quoting *Shady Grove*, 559 U.S. at 422).  Both *Solodyn* and *Loestrin* later followed *Nexium*, agreeing that it would be "inconsistent with *Shady Grove* to conclude that Rule 23 preempts the ban on class actions contained within Illinois antitrust law."  *Solodyn*, 2015 WL 5458570, at *17; *see also Loestrin*, 410 F.Supp.3d at 372 ("This Court joins the *Nexium* and *Solodyn* courts....[and] dismisses for lack of standing the EPPs' claims under the Illinois Antitrust Statute.").

**Utah**:  Premera argues that "[t]here is no statutory requirement under Utah's Antitrust statute that *the named plaintiffs* be citizens or residents of Utah."  Opp. at 13 (emphasis in original).  Several

---

[7] For the same reason, the Court should reject Premera's erroneous argument that Takeda fails to challenge Premera's Alabama antitrust claim and so its Alabama unjust enrichment claim must survive too (Opp. at 27), when in fact Takeda has challenged Premera's Alabama claims in its Opening Brief (at 10-11, 24, 29), and does so again here.

[8] Justice Stevens held that "[a] federal rule...cannot govern a particular case in which the rule would displace a state law that is procedural in the ordinary use of the term but is so intertwined with a state right or remedy that it functions to define the scope of the state-created right," *Shady Grove*, 559 U.S. at 423, and *Nexium*, following this analysis, found that the Illinois Antitrust Act does not appear in a generally applicable procedural law, but rather in the state's substantive antitrust statute.  968 F.Supp.2d at 408-09.

courts have rejected this precise argument, including courts within this Circuit, which Premera ignores. *See Loestrin*, 410 F.Supp.3d at 374 ("The EPPs have failed to allege that any of its named class members are citizens or residents of Utah, and thus, the Court dismisses any claims brought under the antitrust laws of Utah.") (collecting cases).[9]

### B.    Consumer Protection Claims

#### 1.    Premera Does Not Contest Dismissal Of Several Claims (Kansas, New Jersey, North Carolina, Oklahoma)

Takeda's Opening Brief explained why the Court should dismiss Premera's consumer protection claims under the laws of, *inter alia*, Kansas, New Jersey, North Carolina, and Oklahoma. Opening Brief at 14, 16-17, and 20. Premera responded by withdrawing its Kansas and North Carolina consumer protection claims. *See* Opp. at 19 n.8.

While Premera did not expressly withdraw its New Jersey and Oklahoma claims, it entirely failed to respond to Takeda's arguments, including that (1) Premera lacks standing for indirect purchaser claims under both New Jersey's and Oklahoma's consumer protection statutes (Opening Brief at 14), or (2) the New Jersey statute requires communications directed to consumers (*id.* at 17). Because Premera has failed to address these pleading deficiencies, it has abandoned these claims, and they should be dismissed with prejudice. *See Mahoney v. Found. Med., Inc.*, 342 F.Supp.3d 206, 217 (D. Mass. 2018) (Plaintiff "waived" claim where its "opposition to Defendants' Motion to Dismiss fail[ed] to respond to Defendants' arguments").[10]

#### 2.    Premera's Erroneous Rebuttals Doom Its Consumer Claims

**Alaska**:  Premera cites only to the Alaska consumer protection statute and one inapposite case, ignoring entirely the case law that has directly considered the issue and found that the statute

---

[9] *See also Seroquel*, 2022 WL 2438934, at *20 ("Plaintiffs insist that '[t]here is no statutory requirement that the named plaintiffs be citizens or residents of Utah,'...that assertion is belied by the express language of the Utah statute."); *In re Effexor Antitrust Litig.*, 357 F.Supp.3d 363, 393 (D.N.J. 2018) (dismissing Utah claim, rejecting *Liquid Aluminum Sulfate* and following the "majority of courts that have been presented with this statute").

[10] *See also Perkins v. City of Attleboro*, 969 F.Supp.2d 158, 177 (D. Mass. 2013) (claim waived where Plaintiff's opposition failed to respond to Defendant's argument). Should Premera argue that the inclusion of these states in point-headings is sufficient (*e.g.*, Opp. at 16, 18), such is not the case. *See, e.g., Curet-Velàzquez v. ACEMLA De P.R., Inc.*, 656 F.3d 47, 54 (1st Cir. 2011) ("Arguments alluded to but not properly developed...are deemed waived.").

cannot be used to circumvent *Illinois Brick*. *See Miami Prods.*, 546 F.Supp.3d at 236-37.[11]

**Arizona**:  Premera argues that reliance is not an element of its Arizona consumer claim, but fails to acknowledge that reliance is necessary to show injury under the Arizona statute (an element not at issue in Premera's cited cases).  *See Sheet Metal Workers*, 737 F.Supp.2d at 403-04 (dismissing claim, noting that "[t]o state a claim under the [ACFA], Plaintiffs must allege that there was a false promise or misrepresentation in connection with the sale and that they were injured. An injury occurs when *consumers* rely on the misrepresentation, even though that reliance is not reasonable. In other words...plaintiffs would need to allege that GSK...[made] misrepresentations [that] were relied upon by consumers of Wellbutrin SR.") (emphasis supplied).[12]

**Connecticut**:  Premera ignores Connecticut's highest court's decision in *Vacco v. Microsoft Corp.*, which held that indirect purchasers cannot assert an antitrust claim under Connecticut's consumer protection statute.  793 A.2d 1048, 1066-67 (Conn. 2002); *see also In re Niaspan Antitrust Litig.*, 42 F.Supp.3d 735, 764 (E.D. Pa. 2014) (indirect purchasers cannot seek recovery under either the Connecticut Antitrust Act or the CUTPA under *Vacco*, and dismissing unjust enrichment which "would subvert legislative intent.").[13]

**Idaho**:  Premera ignores that its claim may not proceed under Idaho's consumer protection statute because the Idaho statute is limited to "unconscionable 'sales conduct' that is directed at the consumer."  *See In re Zetia (Ezetimibe) Antitrust Litig.*, 400 F.Supp.3d 418, 436-37 (E.D. Va. 2019) (quoting *State ex rel. Wasden v. Daicel Chem. Indus., Ltd.*, 106 P.3d 428, 433-35 (2005)

---

[11] *See also In re Humira (Adalimumab) Antitrust Litig.*, 465 F.Supp.3d 811, 849 (N.D. Ill. 2020) (same); *In re Lidoderm Antitrust Litig.*, 103 F.Supp.3d 1155, 1163 (N.D. Cal. 2015) (same); *In re Dynamic Random Access Memory Antitrust Litig.*, 516 F.Supp.2d 1072, 1108 (N.D. Cal. 2007).  Premera similarly points only to the Alaska statute for its unjust enrichment claim (Opp. at 26), failing to address those cases cited in Takeda's Opening Brief (at 7, 13, 24) that hold that no such claim—consumer protection or unjust enrichment—arises for an indirect purchaser.  *See also In re Sensipar (Cinacalcet Hydrochloride Tablets) Antitrust Litig.*, 2022 WL 736250, at *22 (D. Del. Mar. 11, 2022) (dismissing, *inter alia*, Alaska unjust enrichment claim, finding that "[n]otwithstanding the several cases cited by the EPPs holding the contrary, the weight of authority supports the proposition that indirect purchasers may not bring state law claims for unjust enrichment if that state's antitrust and consumer protection statutes do not otherwise provide a private cause of action for damages.") (collecting cases).

[12] *See also In re Flonase Antitrust Litig.*, 692 F.Supp.2d 524, 536-37 (E.D. Pa. 2010) (same).

[13] Premera relies solely on *Soto v. Bushmaster Firearms Int'l, LLC* (Opp. at 17), while failing to note that *Soto* reaffirmed *Vacco*.  202 A.3d 262, 288 (2019).

(rejecting indirect antitrust claim under Idaho consumer statute)).[14]

**Illinois**:  Premera's Illinois consumer protection claim must be dismissed for either of lack of standing or for failure to plead deception.[15]  Premera misquotes *Laughlin v. Evanston Hosp.* (Opp. at 17), which found that "[t]he defendants have the correct understanding of the Consumer Fraud Act's intendment. There is no indication that the legislature intended that the Consumer Fraud Act be an additional antitrust enforcement mechanism." 550 N.E.2d 986, 993 (Ill. 1990).  Accordingly, the "majority of [] courts"—including ones in this Circuit—have held that "EPPs do not have standing to maintain what is in essence an antitrust claim by another name under the Illinois Consumer Fraud and Deceptive Business Practices Act." *Loestrin*, 410 F.Supp.3d at 373.[16]

**Maine**:  Premera erroneously relies on *Zetia* for support of its Maine consumer claim, stating that the court "den[ied a] motion to dismiss [the] consumer protection claim" (Opp. at 20), when in fact *Zetia* dismissed the Maine consumer protection claim.  2019 WL 1397228, at *33 (E.D. Va. Feb. 6, 2019) ("this Report recommends that the court GRANT Defendants' motion and DISMISS the EPPs' consumer protection claims in...Maine), *adopted in relevant part by* 400 F.Supp.3d at 437 ("EPPs' claim under Maine's consumer protection statute is DISMISSED...EPPs are not the proper plaintiffs under that statute. R&R at 91-92.").

**Massachusetts**:  Premera relies solely on *In re Pharm. Indus. Average Wholesale Price Litig.* for its Massachusetts consumer claim.  Opp. at 23.  In *Pharm. Indus.*, the court said that nonprofits may fall within Section 9 as opposed to Section 11 of the MCPA when they are otherwise not engaged in trade or commerce.  491 F.Supp.2d 20, 80-82 (D. Mass. 2007).  Not only has Premera failed to plead anything regarding its status as a nonprofit (*see* Complaint, ¶ 8), it expressly alleges that it is engaged in trade or commerce and that its suit is motivated by business considerations.

---

[14] *See also Lidoderm*, 103 F.Supp.3d at 1167-68 (same); *Sheet Metal Workers*, 737 F.Supp.2d at 409-11 (same).

[15] As to deception, Premera's own cases (Opp. at 19-20) note the Illinois statute's deception/reliance requirement. *See, e.g.*, *Shannon v. Boise Cascade Corp.*, 805 N.E.2d 213, 218 (Ill. 2004) ("proof of actual deception of a plaintiff is required" and "statements by the defendant be made with the intention that it reach the plaintiff and influence his action and that it does reach him and that he does rely upon it").

[16] *See also Solodyn*, 2015 WL 5458570, at *16-17; *In re Aggrenox Antitrust Litig.*, 2016 WL 4204478, at *5-7 (D. Conn. Aug. 9, 2016); *In re Lipitor Antitrust Litig.*, 336 F.Supp.3d 395, 422 (D.N.J. 2018).

*Compare* Complaint, ¶ 225 ("Premera...sustained substantial losses and damage to their business and property in the form of overcharges"); and ¶ 266 ("Defendants' conduct had a substantial effect on the business operations of Premera"); with *Loestrin*, 410 F.Supp.3d at 373 (dismissing claim, finding that "even if some or all of the TPPs are non-profits, they are 'motivated by business considerations'") (quoting *Frullo v. Landenberger*, 814 N.E.2d 1105, 1112 (Mass. 2004)).

**Michigan**:  Premera cites, *inter alia*, *Action Auto Glass v. Auto Glass Specialists*, 134 F.Supp.2d 897 (W.D. Mich. 2001) for its Michigan consumer protection claim.  Opp. at 23.  *Action Auto*, which dealt with false advertising and not an alleged antitrust violation, has been criticized for not following Michigan law.  *See, e.g.*, *In re Ford Motor Co. E-350 Van Prods. Liab. Litig. (No. II)*, 2010 WL 2813788, at *66-67 (D.N.J. July 9, 2010) (distinguishing *Action Auto*, noting it failed to cite *Zine v. Chrysler Corp.*, 600 N.W. 2d 384 (Mich. Ct. App. 1999) "which reflects the opinion of the Michigan courts on this question under Michigan law, and Michigan courts have reaffirmed *Zine* on many occasions and have held that the MCPA does not apply to transactions intended primarily for business or commercial, rather than personal, purposes.").

**Missouri**:  Premera relies solely on *State v. Polley*, 2 S.W.3d 887 (Mo. Ct. App. 1999) to support its Missouri consumer protection claim.  Opp. at 23.  Numerous courts have concluded, however, that the Missouri "statute should be construed to authorize only claims brought by persons who have purchased merchandise for their own—but not someone else's—personal, family or household purposes" and that a "contrary interpretation would be at odds with the fundamental purpose of the Act: the protection of consumers."  *See, e.g.*, *Sensipar*, 2022 WL 736250, at *21.[17] Indeed, *Sensipar* distinguished *Polley*, noting that the Missouri court "has not addressed the issue of whether the statute authorizes claims of plaintiffs who purchase—directly or indirectly— merchandise for someone else's personal use."  *Id.* at *21 n.32 (citing *Polley*, 2 S.W.3d at 891-92).  "Consistent with the Court's interpretation of the statute, these state court cases permit consumer-plaintiffs to proceed with claims if they have purchased (albeit indirectly) merchandise

---

[17] *See also In re Asacol Antitrust Litig.*, 2016 WL 4083333, at *12 (D. Mass. July 20, 2016); *In re Express Scripts, Inc., Pharmacy Benefits Mgmt. Litig.*, 2006 WL 2632328, at *10 (E.D. Mo. Sept. 13, 2006).

for their own personal use, not for someone else's personal use." *Id.*

**New Hampshire**:  Aside from the statute, Premera relies solely on *LaChance v. U.S. Smokeless Tobacco Co.*, 931 A.2d 571 (N.H. 2007) for its New Hampshire consumer claim.  Opp. at 24-25. "[N]umerous federal district courts seated within and without New Hampshire have acknowledged that the [NHCPA] requires the proscribed conduct to occur within the state; merely selling a good in New Hampshire is not enough when the proscribed conduct occurs elsewhere."  *In re Pork Antitrust Litig.*, 495 F.Supp.3d 753, 789 (D. Minn. 2020) (quoting *In re Lithium Ion Batteries Antitrust Litig.*, 2014 WL 4955377, at *22 (N.D. Cal. Oct. 2, 2014) (collecting cases)).  And *Pork* confirmed that "Indirect Plaintiffs' reliance on *LaChance*...is misplaced," stating that the "New Hampshire Supreme Court was answering an *Illinois Brick* question....[and] the *Illinois Brick/Minuteman* issue has no bearing on the territoriality question."  *Id.* at 789 n.23.

**Oregon**:  Premera relies solely on *In re Packaged Seafood Prods. Antitrust Litig.*, for its Oregon consumer protection claim.  Opp. at 21.  The *Packaged Seafood* court allowed the claim to proceed when plaintiffs "plausibly allege[d] affirmative misrepresentations[.]" 242 F.Supp.3d 1033, 1083-84 (S.D. Cal. 2017).  Premera pleads no such facts here.  *See also Zetia*, 2019 WL 1397228, at *31 (distinguishing *Packaged Seafood*, noting in a reverse payment action "[c]ourts typically dismiss claims under Oregon's consumer protection law that lack allegations of deceptive conduct").

**Pennsylvania**:  Premera relies solely on *Sheet Metal Workers* for its Pennsylvania consumer protection claim.  Opp. at 21.  As *Sheet Metal Workers* itself confirms, the claim requires deception, which Premera does not claim to have alleged.  737 F.Supp.2d at 421 ("Plaintiffs have adequately pleaded deceptive conduct by GSK and have therefore stated a claim under the PUTPCPL.").  Other courts have refused to follow *Sheet Metal Workers*, finding similar allegations to be insufficient because "[a] claim for deceptive conduct under that statute requires a plaintiff to plead reliance, and EPPs here do not allege that they bought Restasis® in reliance on Allergan's misrepresentations."  *In re Restasis (Cyclosporine Ophthalmic Emulsion) Antitrust Litig.*, 355 F.Supp.3d 145, 160-61 (E.D.N.Y. 2018) (noting *Sheet Metal Workers* failed to address controlling authority *Weinberg v. Sun Co., Inc.*, 777 A.2d 442 (Pa. 2001) and *Toy v. Metro. Life*

*Ins. Co.*, 928 A.2d 186 (Pa. 2007)).

**South Dakota**:  Takeda argues that Premera fails to plead deceptive conduct as required by the South Dakota consumer protection statute.  Opening Brief at 18.  Rather than point to any allegations demonstrating deceptive conduct, Premera cites cases where it claims a "South Dakota consumer protection claim based on antitrust allegations [was] permitted to proceed."  Opp. at 21.  In its cited cases, however, the courts explicitly found that "Plaintiff has alleged [] Defendants' deceptive conduct[.]"  *Sandee's Catering v. Agri Stats, Inc.*, 2020 WL 6273477, at *11 (N.D. Ill. Oct. 26, 2020); *see also Zetia*, 2019 WL 1397228, at *31 (distinguishing *DDAVP* on same grounds, as "[t]he conduct complained of here—an unlawful pay-for-delay settlement agreement—may have harmed consumers, but it did not defraud or mislead them.").  Premera's Complaint contains no allegations of deceptive conduct, and Premera points to none.

**Vermont**:  Premera relies, *inter alia*, on *Elkins v. Microsoft Corp.*, 817 A.2d 9 (Vt. 2002) for its Vermont consumer protection claim.  Opp. at 24.  As other courts have noted, the *Elkins* plaintiffs were consumers, a prerequisite for a claim under the statute.  *See Stinson v. Union Mut. Fire Ins. Co.*, 2019 WL 13061475, at *6 (Vt. Super. Apr. 01, 2019) ("The *Elkins* Court did not abandon or eliminate the requirement that the plaintiff show § 2461(b) 'consumer' status....The Vermont Supreme Court recently reemphasized the 'consumer' standing requirement....stat[ing] '[i]n order to recover under the CPA, a plaintiff must establish that they are a consumer'").  Because Premera is not similarly situated (Opening Brief at 19, 21, n.4), its claim must be dismissed.

**Virginia**:  Premera's Virginia consumer claim fails for both lack of standing and failure to plead deception.  As to standing*,* Premera points to, *inter alia*, *Packaged Seafood* (Opp. at 18), but the court there discusses the ***West*** Virginia statute, not Virginia's.  242 F.Supp.3d at 1087-88.  *Zetia*— Premera's other case—does consider the Virginia statute, but decided (albeit incorrectly) that the plaintiffs were consumers without ruling on Takeda's standing argument made here.  400 F.Supp.3d at 439; *contra In re TFT-LCD (Flat Panel) Antitrust Litig.*, 2013 WL 6327490, at *6 (N.D. Cal. Dec. 3, 2013) (consumer issue); *see also In re TFT-LCD Antitrust Litig.*, 599 F.Supp.2d 1179, 1186 (N.D. Cal. 2009) (standing issue).  As for Virginia's deception requirement, Premera

relies solely on *Synergistic Int'l, LLC v. Korman*.  Opp. at 21.  *Korman*—a trademark infringement action, not an antitrust case—found a violation based on alleged "misrepresentation[s]" that met the prerequisite standard of "a false representation, of material fact, made intentionally and knowingly, with intent to mislead[.]" 402 F.Supp.2d 651, 663-64 (E.D. Va. 2005).  Premera pleads no such similar deceptive or fraudulent practices here.  Opening Brief at 18.

### C.    Unjust Enrichment Claims

#### 1.    Premera Abandoned Its Colorado, Delaware, Georgia, Idaho, Indiana, Kentucky, Louisiana, Montana, New Jersey, Oklahoma, Puerto Rico, Tennessee, Washington, and Wyoming Unjust Enrichment Claims

As with Premera's New Jersey and Oklahoma consumer protection claims, *see* § III.B.1, *supra*, Premera entirely failed to respond to Takeda's arguments that Premera (1) cannot maintain an unjust enrichment claim in states that have not repealed *Illinois Brick*, including at least Colorado, Delaware, Georgia, Indiana, Kentucky, Louisiana, Montana, New Jersey, Oklahoma, Puerto Rico, Washington,[18] and Wyoming (Opening Brief at 24-28), and (2) failed to plead conferral of a direct benefit as required by Idaho law (*Id.* at 30).  Because Premera has failed to reckon with these pleading deficiencies, it has abandoned these unjust enrichment claims and the Court should dismiss them with prejudice.  *Mahoney*, 342 F.Supp.3d at 217.

#### 2.    Premera's Unjust Enrichment Claims In Jurisdictions That Follow *Illinois Brick* Disallowing Indirect Purchaser Claims Must Be Dismissed

Premera points to *Generic Pharm.* to argue that the Court should not follow the long line of cases (including in-Circuit cases) holding indirect purchasers cannot maintain unjust enrichment claims in jurisdictions that have not repealed *Illinois Brick* because such claims are not subject to

---

[18] While Premera appears to rely on *Loestrin* for its Washington claim (Opp. at 29, n.24), *Loestrin* only considered the direct benefit issue and not the fact that Washington has not repealed *Illinois Brick*.  410 F.Supp.3d at 383.  Those courts that have considered the *Illinois Brick* issue have universally refused to allow a Washington unjust enrichment claim to proceed.  *See* Opening Brief at 28 (citing *United Food & Commer. Workers Local 1776 & Participating Emp'rs Health & Welfare Fund v. Teikoku Pharma USA, Inc.*, 74 F.Supp.3d 1052, 1089 (N.D. Cal. 2014); *In re New Motor Vehicles Canadian Exp. Antitrust Litig.*, 350 F.Supp.2d 160, 209-10 (D. Me. 2004); *In re Vascepa Antitrust Litig. Indirect Purchaser*, 2023 WL 2182046, at *11 (D.N.J. Feb. 23, 2023); *In re Novartis & Par Antitrust Litig.*, 2019 WL 3841711, at *6 (S.D.N.Y. Aug. 14, 2019); *Lidoderm*, 103 F.Supp.3d at 1174-75).  Premera entirely fails to address this argument.

*Illinois Brick.* Opp. at 26. Premera presents this argument for at least its Alaska, Arkansas,[19] Connecticut, Florida,[20] and Idaho[21] unjust enrichment claims.

The courts that have considered *Generic Pharm.*'s expansion have refused to follow it. *See, e.g.*, *Novartis*, 2019 WL 3841711, at *6 ("Plaintiffs' citation to [] *Generic Pharm.*...is unpersuasive. While it is true that the gains to the defendant, rather than plaintiffs' losses, present the first step in considering a claim for unjust enrichment, the concern for double recovery and the apportionment of claims remains."); *Vascepa*, 2023 WL 2182046, at *10-11 (refusing to follow *Generic Pharms.*, which the court noted "as the sole authority from within this Circuit for the directly contradictory proposition" and instead "join[ing] the vast majority of courts...that have held that indirect purchasers may not bring state claims for unjust enrichment if they otherwise would be barred from bringing a claim under the state's antitrust and consumer-protection statutes").

### 3. Premera's Unjust Enrichment Claims That Rely On Other Claims Fail

Premera concedes that its Connecticut, Maryland, Massachusetts, Missouri,[22] Illinois,

---

[19] Premera further seeks to rebut Takeda's argument that Arkansas requires conferral of a direct benefit (Opening Brief at 24, 29), relying on *Loestrin* (Opp. at 28, n.12). *Loestrin* failed to analyze the Arkansas unjust enrichment claim in any capacity, and in fact separately agreed with those courts that hold plaintiffs cannot bring unjust enrichment claims in states that have not repealed *Illinois Brick*, like Arkansas. 410 F.Supp.3d at 381-84. Similarly, *Vascepa* (Opp. at 27) did not consider a direct-benefits argument for an Arkansas unjust enrichment claim. 2023 WL 2182046, at *12-13. *In re Cast Iron Soil Pipe And Fittings Antitrust Litig.*, 2015 WL 5166014, at *35 (E.D. Tenn. June 24, 2015) analyzed this requirement and stands unrebutted. Opening Brief at 29.

[20] Takeda points to multiple cases (including from this Circuit) that dismissed a Florida unjust enrichment claim on this ground. Opening Brief at 25. Premera leaves these cases unrebutted. Opp. at 26. As to Takeda's second argument regarding Florida's direct benefit requirement (Opening Brief at 29), the weight of authority considering the mandate in *Kopel v. Kopel*, 229 So. 3d 812 (Fla. 2017) has found that Florida requires a conferral of direct benefit, which Premera does not allege. *See, e.g.*, *Miami Prod. & Chem. Co. v. Olin Corp.*, 2022 WL 3701159, at *2 (W.D.N.Y. Aug. 26, 2022); *In re Namenda Indirect Purchaser Antitrust Litig.*, 2021 WL 2403727, at *36 (S.D.N.Y. June 11, 2021) (same) (collecting cases); *Novartis*, 2019 WL 3841711, at *6-7 (same); *Sensipar*, 2022 WL 736250, at *23 (same); *Zetia*, 2019 WL 1397228, at *36 (same); *Pork*, 495 F.Supp.3d at 793 (same); *Hard Disk Drive*, 2021 WL 4306018, at *26 (same); *Packaged Seafood*, 242 F.Supp.3d at 1090 (same). Two of Premera's cases offer it no support. First, *Solodyn* was decided in 2015, predating *Kopel*. Second, *Sergeants Benevolent Ass'n*. (*i.e.*, *Namenda*), later reversed itself. *See Namenda*, 2021 WL 2403727, at *36 (granting summary judgment, noting that since the Court's motion to dismiss order, *Kopel* "squarely held that to 'prevail on an unjust enrichment claim, the plaintiff must directly confer a benefit to the defendant'" such that the "issue has now been resolved.").

[21] Premera does not address the case law that dismissed Idaho unjust enrichment claims on this ground, including from within this Circuit. *See* Opening Brief at 25; Opp. at 27.

[22] Premera also points to *Gibbons v. J. Nuckolls, Inc.*, 216 S.W.3d 667 (Mo. 2007) for support of its Missouri claim, however, Courts have refused to apply *Gibbons* to antitrust cases like this one. *See, e.g.*, *In re Suboxone*

Utah, and Virginia unjust enrichment claims rise and fall with its antitrust and/or consumer protection claims under the laws of those states. Opp. at 26-27. Because those claims must be dismissed, as explained in both Takeda's Opening Brief (at 13, 20, 25-26) and above (§§ III.A, III.B.2, *supra*), Premera's unjust enrichment claims in these states must also be dismissed. Should any portion of Premera's other Connecticut, Maryland, Massachusetts, Missouri, Illinois, Utah, or Virginia claims survive (they should not), its unjust enrichment claim should nonetheless be dismissed as duplicative. *See* Opening Brief at 32-34; § III.C.4, *infra*.

> **4.    Premera's Unjust Enrichment Claims in California, District of Columbia, Florida, Iowa, Kansas, Maine, Maryland, Michigan, Minnesota, Nebraska, Nevada, New Mexico, New York, North Carolina, North Dakota, Oregon, Rhode Island, South Dakota, Tennessee, Vermont, and Wisconsin Are Duplicative**

Premera points to *Loestrin* to support its argument against dismissing its duplicative unjust enrichment claims. Opp. at 30-31. The *Loestrin* court, however, expressly found that the plaintiffs could "proceed with their unjust enrichment claims under the laws of the states ***in which they assert no other claims***, so long as the state has passed an *Illinois Brick*-repealer statute signaling that such a cause of action would not violate the state's public policy." 410 F.Supp.3d at 382. Takeda moved to dismiss only unjust enrichment claims as duplicative where Premera had otherwise presented an antitrust or consumer protection claim that Takeda had not challenged on state-specific grounds. *See* Opening Brief at 33 ("in at least the twenty-one states in which Premera's unjust enrichment claims duplicate its statutory claims (and any other state where the Court may find Premera plead a claim under state antitrust or consumer protection statutes), those unjust enrichment claims should be dismissed."). Thus, Premera's unjust enrichment claims are entirely duplicative of, and rise and fall with, its antitrust or consumer protection claims.

## IV.    CONCLUSION

For the foregoing reasons, the Court should grant Takeda's Motion to Dismiss.

---

*(Buprenorphine Hydrochloride & Naloxone) Antitrust Litig.*, 64 F.Supp.3d 665, 701-02 (E.D. Pa. 2014) ("*Gibbons* did not consider facts in the antitrust context" and "allowing a claim under Missouri's consumer protection law would provide an end-run around the state's prohibition of antitrust claims by indirect purchasers.").

Dated: September 8, 2023

Respectfully submitted,

*/s/ Joshua S. Barlow*

Fred A. Kelly, Jr. (BBO #544046)
Joshua Barlow (BBO #667472)
H. Tiffany Jang (BBO #691380)
ARNOLD & PORTER KAYE SCHOLER LLP
200 Clarendon Street
53rd Floor
Boston, MA 02116
fred.kelly@arnoldporter.com
joshua.barlow@arnoldportner.com
tiffany.jang@arnoldporter.com

Andre Geverola (*pro hac vice*)
ARNOLD & PORTER KAYE SCHOLER LLP
70 West Madison Street
Suite 4200
Chicago, IL 60602-4231
Telephone: (312) 583-2430
andre.geverola@arnoldporter.com

Katie J.L. Scott (*pro hac vice*)
ARNOLD & PORTER KAYE SCHOLER LLP
3000 El Camino Real
Five Palo Alto Square, Suite 500
Palo Alto, CA 94306-3807
Telephone: (650) 319-4529
katie.scott@arnoldporter.com

Michael F. Brockmeyer (*pro hac vice*)
HAUG PARTNERS LLP
1717 K St. NW, NW
Washington, DC 20006
Telephone: (202) 292-1530
Facsimile: (202) 292-1531
mbrockmeyer@haugpartners.com

Ralph E. Labaton (*pro hac vice*)
HAUG PARTNERS LLP
745 Fifth Avenue
New York, NY 10151
Telephone: (212) 588-0800
rlabaton@haugpartners.com

*Attorneys for Takeda Pharmaceutical Company Limited, Takeda Pharmaceuticals U.S.A., Inc, and Takeda Pharmaceuticals America, Inc.*

## CERTIFICATE OF SERVICE

I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) on September 8, 2023.

/s/ *Joshua S. Barlow*