UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|   |   |
|---|---|
| PREMERA BLUE CROSS, on behalf of itself and all others similarly situated, ) ) ) ) Plaintiff, ) ) v. ) ) TAKEDA PHARMACEUTICAL COMPANY ) LIMITED, ET AL. ) ) Defendants. ) ) | Civil Action No. 23-11254-MJJ |

## MEMORANDUM OF DECISION

November 20, 2023

JOUN, D.J.

Plaintiff Premera Blue Cross ("Plaintiff" or "Premera"), a healthcare company, brings this proposed class action on behalf of itself and similarly situated "end payors" ("EPs") against Defendants Takeda Pharmaceutical Company Limited, Takeda Pharmaceuticals U.S.A., Inc., Takeda Pharmaceuticals America, Inc. (collectively, "Takeda"), which are pharmaceutical companies. [Doc. No. 1]. In its Complaint, Premera contends that Takeda violated a litany of state laws by illegally reaping monopoly profits for its drug Amitiza through a conspiracy with other pharmaceutical companies to delay market competition between Amitiza and cheaper, generic versions of it. [*Id.*]. Such anticompetitive profits allegedly came at the expense of end payors like Premera, which pay for prescription drugs purchased by others. [*Id.*]. Takeda has responded with a Motion to Dismiss for lack of Article III standing and for failure to state a

claim ("Motion to Dismiss"), seeking to dismiss the Complaint entirely. [Doc. No. 33]. For the reasons below, the Motion to Dismiss is GRANTED.

## I. LEGAL STANDARD

### a. Federal Rule of Civil Procedure 12(b)(1)

"On a motion to dismiss for lack of subject-matter jurisdiction, 'the party invoking the jurisdiction of a federal court carries the burden of proving its existence.'" *SPARTA Ins. Co. v. Pennsylvania Gen. Ins. Co.*, 621 F. Supp. 3d 169, 175 (D. Mass. 2022) (quoting *Johansen v. United States*, 506 F.3d 65, 68 (1st Cir. 2007). The parties accept Takeda's attack on subject-matter jurisdiction to be facial, not factual. [Doc. No. 34 at 16; Doc. No. 41 at 16]. So, the Court "take[s] the complaint's well-pleaded allegations as true when analyzing [its] jurisdiction," and its "review of the allegations mirrors the plausibility standard for Rule 12(b)(6) motions." *Laufer v. Acheson Hotels, LLC*, 50 F.4th 259, 265 (1st Cir. 2022), *cert. granted*, 143 S. Ct. 1053 (2023). But the Court "must 'accept as valid' the merits of [plaintiff's] legal claims in evaluating Article III standing," and assume that the claims have been adequately pled for purposes of the evaluation. *Wiener v. MIB Grp., Inc.*, No. 22-1907, 2023 WL 7399371, at *4 (1st Cir. Nov. 9, 2023) (quoting *Fed. Election Comm'n v. Cruz*, 596 U.S. 289, 298 (2022)).

### b. Federal Rule of Civil Procedure 12(b)(6)

In evaluating a motion to dismiss for failure to state a claim, the Court must determine whether a complaint contains enough factual allegations to "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). In conducting this review, the Court "ignores statements in the complaint that

simply offer legal labels and conclusions or merely rehash cause-of-action elements, then takes the complaint's well-pled (*i.e.*, non-conclusory, non-speculative) facts as true, drawing all reasonable inferences in the pleader's favor, and sees if they plausibly narrate a claim for relief." *Sonoiki v. Harvard Univ.*, 37 F.4th 691, 703 (1st Cir. 2022) (cleaned up). "[G]auging a pleaded situation's plausibility is a context-specific job that compels [the Court] to draw on [its] judicial experience and common sense." *Id.* What is more, the Court "can consider (a) implications from documents attached to or fairly incorporated into the complaint, (b) facts susceptible to judicial notice, and (c) concessions in the plaintiff's response to the motion to dismiss." *Lyman v. Baker*, 954 F.3d 351, 360 (1st Cir. 2020) (cleaned up).

## II. BACKGROUND

### a. Regulatory Context

The Federal Food, Drug, and Cosmetics Act, as amended and codified at 21 U.S.C. § 301, *et seq.* ("FDCA"), regulates the sale of prescription drugs. This market regulation includes a requirement that a new drug be approved by the federal Food and Drug Administration ("FDA") through a New Drug Application ("NDA") before the new drug may be marketed to the public. *Id.* at § 355(b). A related FDA approval process governs the marketing of generic drugs.

The Drug Price Competition and Patent Term Restoration Act of 1984 (the Hatch-Waxman Act), an amendment to the FDCA, *id.* at § 355 (as codified), largely defines this FDA approval process for generic drugs. The Act enables manufacturers to seek approval to market a generic drug by filing an expedited Abbreviated New Drug Application ("ANDA") with the FDA. *Id.* § 355(j). If the ANDA demonstrates that the generic drug is pharmaceutically equivalent and bioequivalent with the brand-name version of the drug, then the FDA approves

the generic drug without the "costly and time-consuming studies needed to obtain approval for a [new] drug." *F.T.C. v. Actavis, Inc.*, 570 U.S. 136, 142 (2013) (cleaned up); 21 U.S.C. § 355(j).

"Because brand-name drugs are typically protected by patents, the Hatch-Waxman Act requires the aspiring generic manufacturer to demonstrate to the FDA that the proposed generic drug will not infringe any patent listed by the competing brand-name manufacturer in the FDA's 'Orange Book.'" *In re Amitiza Antitrust Litig.*, No. CV 21-11057-RGS, 2022 WL 17968695, at *1 (D. Mass. Dec. 27, 2022). Among other avenues, the generic manufacturer may accomplish this by filing a certification claiming that any listed patent "is invalid or will not be infringed by the manufacture, use, or sale of the new drug for which the application is submitted." 21 U.S.C. § 355(j)(2)(A)(vii)(IV). This "paragraph IV" certification, "automatically counts as patent infringement." *Actavis*, 570 U.S. at 143 (citing 35 U.S.C. § 271(e)(2)(A)). "If the brand-name patentee brings an infringement suit within 45 days, the FDA then must withhold approving the generic, usually for a 30–month period, while the parties litigate patent validity (or infringement) in court." *Id.* (citing 21 U.S.C. § 355(j)(5)(B)(iii))

To incentivize the market entry of generic manufacturers, the Hatch-Waxman Act grants the first to file an ANDA a 180-day period of exclusivity. *Id.* (citing § 355(j)(5)(B)(iv)). "During that period of exclusivity[,] no other generic can compete with the brand-name drug." *Id.* at 143–44. "The brand-name manufacturer, however, remains free during this 180-day period to launch a repackaged 'authorized generic' (AG) of its own to compete for a share of the market." *In re Amitiza*, 2022 WL 17968695, at *1.

b.  Relevant Facts[1]

The drug Amitiza (lubiprostone) is a chloride-channel activator that the FDA has approved for treating several medical conditions relating to constipation. [Doc. No. 1 at ¶¶ 103–05, 119]. Since 2004, Amitiza has been subject to a joint commercialization agreement between Sucampo, the company that developed Amitiza, and Takeda, a more established pharmaceutical conglomerate. [*Id.* at ¶¶ 100, 106–10]. This agreement and its later extension granted Takeda a license to all patents for Amitiza and, since 2014, gave Takeda sole responsibility for marketing and selling the drug in the United States. [*Id.* at ¶¶ 109–11]. In 2012, the FDA accepted as substantially complete an ANDA concerning a generic version of Amitiza that the generic manufacturer Par had filed. [*Id.* at ¶¶ 127, 135–36]. Takeda and Sucampo then filed a Hatch-Waxman patent infringement suit against Par, while also submitting a citizen petition to the FDA that sought to block approval of the Par generic. [*Id.* at ¶¶ 140–43].

In September 2014, Takeda, Sucampo, and Par settled the patent infringement suit. [*Id.* at ¶¶ 3–4, 148–49]. Under the settlement terms, Par agreed to delay introducing a generic to the market until January 2021. [*Id.*]. In exchange, a declining royalty structure disincentivized Takeda and Sucampo from competing with Par's generic, and the parties committed to delay competition from other generics. [*Id.* at ¶¶ 149, 157]. In the wake of this settlement, no generic Amitiza came to market until Par's generic did so in January 2021. [*Id.* at ¶ 2]. No other generic competitors entered the market until January 2023. [*Id.*].

End-payor entities like Premera pay for prescription drugs for others, such as their members. [*Id.* at ¶ 198]. Due to the delay in generic Amitiza entering the market, Premera and

---

[1] The Court draws these facts from the Complaint, [Doc. No. 1], and as summarized in Premera's Opposition, [Doc. No. 41 at 14–16]; accepting well-pled facts as true for the purposes of this Motion to Dismiss, but disregarding mere legal conclusions or speculative statements in the Complaint. *Sonoiki*, 37 F.4th at 703.

other end payors have paid higher prices for brand or generic Amitiza since July 17, 2015. [*Id.* at ¶¶ 222–25].

### III.  PROCEDURAL HISTORY

On June 2, 2023, Premera filed the proposed class action Complaint on behalf of itself and a class of end payors, asserting claims against Takeda for Conspiracy and Combination of Trade under State Law (Count I), [Doc No. 1 at ¶¶ 245–53], Monopolization under State Law (Count II),[2] [*Id.* at ¶¶ 254–62], Unfair and Deceptive Trade Practices under State Law (Count III),[3] [*Id.* at ¶¶ 262–70], and Unjust Enrichment under State Law (Count IV),[4] [*Id.* at ¶¶ 271–85]. On July 31, 2023, Takeda filed the Motion to Dismiss, seeking to dismiss the Complaint in its entirety. [Doc. No. 33]. Premera responded with a Memorandum of Law in Opposition to Takeda's Motion to Dismiss ("Opposition") on August 22, 2023. [Doc. No. 41]. Takeda filed a Reply on September 9, 2023. [Doc. No. 44].

---

[2] Premera brings the claims in Count I and Count II under the laws of the following jurisdictions: Alabama, Arizona, California, the District of Columbia, Hawaii, Illinois, Iowa, Kansas, Maryland, Maine, Michigan, Minnesota, Mississippi, Nebraska, Nevada, New Mexico, New York, North Carolina, North Dakota, Oregon, Rhode Island, South Dakota, Tennessee, Utah, Vermont, and Wisconsin. Premera indicated that it is not pursuing claims for these Counts under Florida law. [Doc. No. 41 at 22–23].

[3] Premera brings the claims in Count III under the laws of the following jurisdictions: Alaska, Arizona, California, Connecticut, the District of Columbia, Florida, Idaho, Illinois, Maine, Massachusetts, Michigan, Minnesota, Missouri, Nebraska, New Hampshire, New Jersey, New Mexico, New York, Oklahoma, Oregon, Pennsylvania, South Dakota, Utah, Vermont, West Virginia, and Wisconsin. Claims for Count III under Kansas and North Carolina law were withdrawn by Premera. [Doc. No. 41 at 30, n. 8].

[4] Premera brings the claims in Count IV under the laws of the following jurisdictions: Alabama, Alaska, Arizona, Arkansas, California, Colorado, Connecticut, Delaware, the District of Columbia, Florida, Georgia, Hawaii, Idaho, Illinois, Indiana, Iowa, Kansas, Kentucky, Louisiana, Maine, Maryland, Massachusetts, Michigan, Minnesota, Mississippi, Missouri, Montana, Nebraska, Nevada, New Hampshire, New Jersey, New Mexico, New York, North Carolina, North Dakota, Oklahoma, Oregon, Pennsylvania, Puerto Rico, Rhode Island, South Carolina, South Dakota, Tennessee, Utah, Vermont, Virginia, Washington, West Virginia, Wisconsin, and Wyoming.

## IV. ANALYSIS

### A. <u>Premera's Individual Claims</u>

#### 1. Article III Standing

As Premera admits, it does not specifically allege the identity of any state in which it has purchased or reimbursed one of its members for a purchase of Amitiza.[5] [Doc. No. 41 at 6, n.3, 9]. Given Premera's incorporation and principal place of business in Washington, [Doc. No. 1 at ¶ 8], and Premera's business activity in Alaska, however, the Court infers that Premera has purchased or reimbursed a purchase of the drug in both these states. [*See id.* at ¶¶ 198, 222, 225, 239, 246, 255, 264, 272]; *see also In re Auto. Parts Antitrust Litig.*, 29 F. Supp. 3d 982, 1004 (E.D. Mich. 2014); *In re Flonase Antitrust Litig.*, 610 F. Supp. 2d 409, 419 (E.D. Pa. 2009). Takeda itself accepts these inferences to be reasonable. [Doc. No. 33 at 1–2; Doc. No. 34 at 18]. And they "plausibly demonstrate" Premera's Article III standing to pursue its claims in Alaska and Washington on an individual basis. *DiCroce v. McNeil Nutritionals, LLC*, 82 F.4th 35, 39 (1st Cir. 2023); [*See e.g.*, Doc No. 1 at 7, 222–25, 239, 247]; *see also In re Loestrin 24 FE Antitrust Litig.*, 410 F. Supp. 3d 352, 368 (D.R.I. 2019) (holding that end payors had standing "in states where they purchased the drugs at issue and/or reimbursed their members for purchases of the drugs at issue"); *In re Nexium (Esomeprazole) Antitrust Litig.*, 968 F. Supp. 2d 367, 404 (D. Mass. 2013) (holding that end payors' payments for drug purchases at supracompetitive prices that were allegedly obtained through anticompetitive conduct plausibly established standing); *Wiener v. MIB Grp., Inc.*, No. 22-1907, 2023 WL 7399371, at *1 (1st Cir. Nov. 9, 2023) ("[A] past, out-of-pocket loss is a quintessential basis for Article III standing[.]").

---

[5] In discussing the drug Amitiza, the Court refers to both its brand and generic versions, unless either is specified in particular.

It cannot be reasonably inferred that Premera has purchased or reimbursed a purchase for Amitiza in any of the other jurisdictions at issue in Premera's Complaint. "Because 'standing is not dispensed in gross,'" Premera has not demonstrated its standing for any individual claims beyond those brought under Alaska and Washington law. *Wiener*, 2023 WL 7399371, at *4 (quoting *TransUnion LLC v. Ramirez*, ––– U.S. –––, 141 S. Ct. 2190, 2208 (2021)). The Court turns to whether the Complaint adequately states Premera's individual claims under these states' laws.

    **2.**    **Viability of Premera's Individual Claims**

Premera brings consumer protection claims under the Alaska Unfair Trade Practices and Consumer Protection Act ("AUTCPA" or the "Act"), [Doc. No. 1 at ¶¶ 263–70], and unjust enrichment claims, [Doc. No. 1 at ¶¶ 271–85], under Alaska and Washington law. Takeda primarily challenges these claims: first, for being pled without differentiation or details as to how each jurisdiction's specific legal requirements are satisfied, [Doc. No. 34 at 2, 24, 34–35]; and second, for being impermissible due to Alaska and Washington having partially adopted the rule of a U.S. Supreme Court decision, *Illinois Brick Co. v. Illinois*, 431 U.S. 720 (1977), to bar private, indirect-purchaser plaintiffs like Premera and other end payors from recovering damages for antitrust violations, [Doc. No. 34 at 3, 25, 35–36, 40]. For its part, Premera has responded that a complaint need not spell out the level of detail that Takeda calls for in order to plausibly state its claims, [Doc. No. 45 at 26–27, 36]; and Premera relies on a plain language reading of the AUTCPA and several federal district court decisions to support the viability of its claims despite the partial adoption of *Illinois Brick* by Alaska and Washington, [*Id.* at 21, 27, 37–40].

### i. *Consumer Protection Claims under Alaska Law*

The AUTCPA proscribes "[u]nfair methods of competition" and "unfair or deceptive acts or practices," Alaska Stat. Ann. § 45.50.471, with its provisions applied "broadly," *ASRC Energy Servs. Power & Commc'ns, LLC v. Golden Valley Elec. Ass'n, Inc.*, 267 P.3d 1151, 1161 (Alaska 2011), and read giving "due consideration and great weight" to interpretations of Section 5(a)(1) of the Federal Trade Commission Act (15 U.S.C. § 45(a)(1)) ("FTCA"), Alaska Stat. Ann. § 45.50.545. Any "person who suffers an ascertainable loss of money or property as a result of another person's act or practice declared unlawful by [§] 45.50.471 may bring a civil action" for damages. *Id.* at § 45.50.531. Consistent with the Act's broad scope and interpretations of the FTCA, it has been read to cover antitrust violations. *E.g.*, *Fed. Trade Comm'n v. Mylan Lab'ys, Inc.*, 99 F. Supp. 2d 1, 5 (D.D.C. 1999) (allowing AUTCPA claims for antitrust violations); *see also F.T.C. v. Indiana Fed'n of Dentists*, 476 U.S. 447, 454–55 (1986) (holding that the standard of unfairness under the FTCA encompasses "practices that violate the Sherman Act and the other antitrust laws"). Courts have differed, however, as to whether indirect purchasers may sue under the AUTCPA for antitrust violations in light of *Illinois Brick*, 431 U.S. 720. *Compare In re Lidoderm Antitrust Litig.*, 103 F. Supp. 3d 1155, 1163 (N.D. Cal. 2015) (dismissing AUTCPA claims for antitrust violations), *with In re Generic Pharms. Pricing Antitrust Litig.*, No. 16-CB-27242, 2022 WL 1470272, at *5 (E.D. Pa. May 10, 2022) (denying motion to reconsider decision to allow indirect purchasers' AUTCPA claims for antitrust violations to proceed).

In *Illinois Brick*, the Supreme Court "held that direct purchasers may sue antitrust violators, but also ruled that indirect purchasers may not sue." *Apple Inc. v. Pepper*, ––– U.S. –––, 139 S. Ct. 1514, 1519 (2019). As the Supreme Court later clarified, this holding under federal antitrust law does not preempt state antitrust laws from allowing for recovery by indirect

9

purchasers. *See California v. ARC America Corp.*, 490 U.S. 93, 101–02, 105–06 (1989). That is, "the federal indirect-purchaser rule does not prevent indirect purchasers from recovering damages under state antitrust laws where the state laws otherwise allow it." *Miami Prod. & Chem. Co. v. Olin Corp.*, 546 F. Supp. 3d 223, 236 (W.D.N.Y. 2021) (cleaned up).

In Alaska, the state's antitrust statute, the Alaska Restraint of Trade Act, Alaska Stat. Ann. § 45.50.562, *et seq.*, ("ARTA"), was amended in 2003 to partially reject *Illinois Brick*, *see* Alaska Stat. Ann. § 45.50.577(I); *In re Lidoderm*, 103 F. Supp. 3d at 1163. The amendment made Alaska's attorney general "the only person who can bring an antitrust claim for damages on behalf of indirect purchasers under Alaska's Restraint of Trade Act." *In re Humira (Adalimumab) Antitrust Litig.*, 465 F. Supp. 3d 811, 849 (N.D. Ill. 2020). No other Alaska statute has rejected or otherwise addressed *Illinois Brick*. Nor is the Court aware of any relevant Alaska court decision to have addressed the implications of *Illinois Brick* and the 2003 amendment for indirect purchasers' ability to bring claims for antitrust violations under the AUTCPA or any other Alaska law. Given this legal landscape, most federal courts have declined to "construe[] [the AUTCPA] to permit claims based on alleged antitrust and monopolization conduct by indirect purchasers." *In re Lidoderm*, 103 F. Supp. 3d at 1163; *see also Miami Prod. & Chem. Co.*, 546 F. Supp. 3d at 236 (noting courts have concluded that the AUTCPA precludes plaintiffs from bringing claims as indirect purchasers even under a non-antitrust unfair practices theory" and collecting cases (cleaned up)); *but see In re Generic Pharms.*, 2022 WL 1470272, at *5.

The Court joins the majority of federal courts that have addressed this issue, and concludes that, as an indirect purchaser, Premera cannot bring AUTCPA claims for the antitrust violations it alleges. "[T]he clear intent of the Alaska antitrust statute reserv[es] to the Alaska Attorney General the ability to seek damages on behalf of indirect purchasers" for antitrust

10

violations. *In re Lidoderm*, 103 F. Supp. 3d at 1163. To allow indirect purchasers to bring AUTCPA claims for antitrust violations would "circumvent Alaska's partial indirect purchaser bar." *In re Humira*, 465 F. Supp. 3d at 849. Therefore, the AUTCPA should be read "in conjunction with Alaska's Restraint of Trade Act," to preclude indirect-purchaser plaintiffs from bringing claims under an antitrust theory.[6] *Id.*

### ii. *Unjust Enrichment Claims under Alaska and Washington Law*

Premera submits that "generally, an unjust enrichment claim requires a plaintiff to allege that: (1) he or she conferred a benefit on defendant, and (2) defendant's retention of the benefit under the circumstances is unjust." [Doc. No. 41 at 41 (quoting *In re: EpiPen (Epinephrine Injection, USP) Mktg., Sales Pracs. & Antitrust Litig.*, 336 F. Supp. 3d 1256, 1345 (D. Kan. 2018))]. Consistent with this broad statement, the Complaint alleges that: "Takeda derived a financial benefit traceable to overpayments for Amitiza and generic Amitiza by Premera," and "Takeda's retention of that benefit would be unjust." [*Id.* (citing Doc. No. 1 at ¶¶ 276, 282) (cleaned up)]. Premera offers no persuasive legal authority, however, that demonstrates its ability to state unjust enrichment claims under Alaska or Washington law, given these states' partial adoption of *Illinois Brick*.

---

[6] Premera cites the AUTCPA as broadly authorizing private causes of action under its provisions, with no specific exclusion of indirect purchasers that seek damages for antitrust violations. [Doc. No. 41 at 27]. But Premera simply ignores the significance of the more recent amendment to AUTCPA's neighboring statute, the ARTA, which partially adopts the rule of *Illinois Brick*. The plain language of ARTA, along with "the legislative history, and the legislative purpose behind the statute" bear consideration. *W. Star Trucks, Inc. v. Big Iron Equip. Serv., Inc.*, 101 P.3d 1047, 1050 (Alaska 2004). Moreover, Alaska recognizes implied repeal and *in pari materia* as principles of statutory interpretation. *See Ray v. State*, 513 P.3d 1026, 1034 (Alaska 2022) ("The legislature is not required to expressly state that it is repealing or modifying a statute in order to do so; instead, we apply normal tools of statutory construction to discern the legislature's intent."); *Allen v. Alaska Oil & Gas Conservation Comm'n*, 147 P.3d 664, 668 (Alaska 2006) ("In general, if two statutes conflict, then the later in time controls over the earlier, and the specific controls over the general."); *Bullock v. State, Dep't of Cmty. & Reg'l Affs.*, 19 P.3d 1209, 1214–15 (Alaska 2001) ("This court will generally construe statutes *in pari materia* where two statutes . . . deal with the same subject matter." (cleaned up)). And the Alaska Supreme Court has indicated an expectation that plaintiffs bringing AUTCPA claims for antitrust violations should satisfy antitrust standing. *See Aloha Lumber Corp. v. Univ. of Alaska*, 994 P.2d 991, 1002 (Alaska 1999) (suggesting that a plaintiff would need antitrust standing to pursue AUTCPA claims for antitrust violations).

As discussed above, Alaska has only partially rejected *Illinois Brick*, precluding private indirect-purchaser plaintiffs from bringing damages claims for antitrust violations under the ARTA or the AUTCPA. *Supra*, Section IV.A.2.i. Similarly, Washington partially rejects *Illinois Brick* to bar such claims by indirect purchasers under its consumer protection statute. *See Blewett v. Abbott Labs.,* 86 Wash. App. 782, 789 (1997) (holding that indirect purchasers lack standing to sue under the Washington Consumer Protection Act); *State v. LG Elecs., Inc.*, 185 Wash. App. 123, 138–39 (2014) (noting that the Washington legislature later amended its Consumer Protection Act to authorize the state's attorney general to recover restitution for indirect purchasers). Yet, Premera has not cited any legal authority from Alaska or Washington to support the authorization of unjust enrichment claims for antitrust violations under these circumstances. Nor is the Court aware of such authority. Joining the majority of courts to have considered this issue, the Court concludes that indirect purchasers cannot bring unjust enrichment claims for antitrust violations under Alaska or Washington law, as it would "subvert the statutory scheme" of these states' partial adoption of *Illinois Brick*.[7] *In re New Motor Vehicles Canadian Exp. Antitrust Litig.*, 350 F. Supp. 2d 160, 211 (D. Me. 2004); *see In re Solodyn (Minocycline Hydrochloride) Antitrust Litig.*, No. CV 14-MD-02503-DJC, 2015 WL 5458570, at *18 (D. Mass. Sept. 16, 2015) ("[T]he vast majority of courts have held that indirect purchasers may not bring state claims for unjust enrichment if they otherwise would be barred from bringing a claim under that state's antitrust and consumer protection statutes, absent a showing that the common law of the state in question expressly allows for such recovery." (cleaned up)); *In re Vascepa Antitrust Litig. Indirect Purchaser Plaintiffs*, No.

---

[7] The Court does not reach Takeda's arguments challenging Premera's claims under Alaska and Washington law as being pled without sufficient differentiation or jurisdiction-specific detail. [Doc. No. 34 at 2, 24, 34–35].

CV2112061ZNQTJB, 2023 WL 2182046, at *10 (D.N.J. Feb. 23, 2023) (dismissing unjust enrichment claims for antitrust violations under Alaska and Washington law, and collecting cases); *In re Novartis & Par Antitrust Litig.*, No. 18 CIV. 11835, 2019 WL 3841711, at *6 (S.D.N.Y. Aug. 15, 2019) (same, noting that to allow indirect purchasers' unjust enrichment claims for antitrust violations would implicate *Illinois Brick*'s "concern for double recovery and the apportionment of claims").[8]

### B. Premera's Putative Class Claims

Given that Premera has not plausibly stated any viable individual claims of its own against Takeda, Premera "cannot assert the potential claims of the tentative class members." *Santos v. SANYO Mfg. Corp.*, No. CIV.A. 12-11452-RGS, 2013 WL 1868268, at *7 (D. Mass. May 3, 2013); *see also Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 156 (1982) ("We have repeatedly held that a class representative must be part of the class[.]" (cleaned up)); *cf. Brito v. Garland*, 22 F.4th 240, 247 (1st Cir. 2021) ("A class action 'ordinarily must be dismissed as moot if no decision on class certification has occurred by the time that the individual claims of all named plaintiffs have been fully resolved.'" (quoting *Cruz v. Farquharson*, 252 F.3d 530, 533 (1st Cir. 2001)). A named plaintiff that does not state any viable claim, naturally lacks the incentive needed to adequately litigate claims on behalf of a class. *See In re Asacol Antitrust*

---

[8] *See also United Food & Com. Workers Loc. 1776 & Participating Emps. Health & Welfare Fund v. Teikoku Pharma USA, Inc.*, 74 F. Supp. 3d 1052, 1089 (N.D. Cal. 2014) (dismissing unjust enrichment claims for antitrust violations under Alaska and Washington law, and collecting cases); *Sergeants Benevolent Ass'n Health & Welfare Fund v. Actavis, plc*, No. 15 CIV. 6549 (CM), 2018 WL 7197233, at *57 (S.D.N.Y. Dec. 26, 2018) (same; "agree[ing] with the logic of [collected] decisions, which is respectful of states' own policy determinations about who may recover for anticompetitive conduct"); *cf. In re Pre-Filled Propane Tank Antitrust Litig.*, 893 F.3d 1047, 1059 (8th Cir. 2018) (holding that indirect purchasers' requests "to use disgorgement" would "violate the policy concerns in *Illinois Brick*," and were "an impermissible attempt to circumvent" the decision).

*Litig.*, 907 F.3d 42, 48–49 (1st Cir. 2018). Accordingly, the Court will dismiss all Premera's non-individual claims.

### C. Leave for Premera to Amend its Complaint

In a footnote to its Opposition, Premera requested leave to amend the Complaint with "the specific states in which it itself paid for Amitiza purchases," if the Court determines that information to be required. [Doc. No. 41 at 17, fn.3]. Such a request holds "no legal significance." *City of Miami Fire Fighters' & Police Officers' Ret. Tr. v. CVS Health Corp.*, 46 F.4th 22, 36 (1st Cir. 2022). With Takeda's Motion to Dismiss having given notice of deficiencies in the Complaint, if Premera "had something relevant to add, they should have moved to add it then." *Fire & Police Pension Ass'n of Colorado v. Abiomed, Inc.*, 778 F.3d 228, 247 (1st Cir. 2015). "In the absence of exceptional circumstances, a district court is under no obligation to offer a party leave to amend when such leave has not been requested by motion." *Hochendoner v. Genzyme Corp.*, 823 F.3d 724, 735–36 (1st Cir. 2016). The Court denies Premera's contingent request for leave to amend.

### CONCLUSION

For the above reasons, Takeda's Motion to Dismiss is <u>GRANTED</u>. Premera's individual claims under Alaska and Washington law are dismissed with prejudice. Premera's other claims are dismissed without prejudice.

/s/ Myong J. Joun
United States District Judge